401 So.2d 1082 (1981)
Wilbert LeBLANC, Jr., Plaintiff-Appellant,
v.
CONSOLIDATED ALUMINUM COMPANY et al., Defendants-Appellees.
No. 8336.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Rehearing Denied August 13, 1981.
*1083 Otha Curtis Nelson, Baton Rouge, for plaintiff-appellant.
Plauche, Smith, Hebert & Nieset, Reid K. Hebert, Lake Charles, for defendants-appellees.
Before CUTRER, STOKER and BIENVENU,[*] JJ.
BIENVENU, Judge.
This is a workman's compensation case in which plaintiff alleges that he was totally and permanently disabled as a result of a work-related accident on October 13, 1977, although he also offers testimony about a prior accident within the course and scope of his employment with this same defendant in June of 1977 which, to some extent, may have combined to produce the problems he complains of. He also claims penalties and attorney's fees.
On October 13, 1977, plaintiff contends that he was in the process of mixing concrete when he slipped while lifting a bag of cement and fell between the pallet and the mixer. There is no real dispute as to the occurrence of this accident; what is at question is whether plaintiff was injured and, if so, to what extent.
Plaintiff complained of low back pain, reported the accident, and was seen by Dr. M. H. Gold, the self-insured defendant's company physician, and was sent back to work on light duty as he continued to be treated by Dr. Gold. Because of plaintiff's persistent complaints, Dr. Gold in time referred him to Dr. William G. Akins, an orthopedic surgeon, on October 31, 1977, who found no objective symptoms for plaintiff's complaints. Plaintiff was again seen by Dr. Akins, on November 11, 1977 and December 30, 1977, at which time, although Dr. Akins felt plaintiff could return to his regular duties, he gave plaintiff the "benefit of the doubt" because of plaintiff's persistent complaints and apparent hostility toward defendant employer, and placed him on a light duty status to return for an additional appointment on January 23, 1978, which plaintiff failed to keep.
Plaintiff remained at work until February 9, 1978, when he left the job because he felt unable to perform the duties to which he was assigned, and was paid weekly compensation *1084 benefits of $130.00, the rate to which he was entitled, until June 27, 1978, when his benefits were terminated as a result of a letter defendant's witnesses say they received from Dr. Thomas C. LaBorde, a physician in Lafayette that plaintiff had begun seeing, to the effect that plaintiff was no longer disabled.
In addition to Dr. LaBorde, plaintiff consulted a great many doctors, and various other health care providers, beginning on February 9, 1978 and continuing through the dates of trial. He was hospitalized on two occasions and apparently a myelogram was performed on him, but the details of all of his evaluations, treatment, testing, etc. are for the most part sketchy, because very little medical evidence was presented at the trial. The evidence is, however, that defendant paid bills for such services and expenses totalling $5,619.99.
The case came up for trial on November 30, 1979, and at the conclusion of the day plaintiff rested his case. No resumption date was at that time decided upon, but apparently the trial was later scheduled to resume on January 17, 1980, but refixed instead for February 15, 1980, on which date plaintiff attempted to reopen his case. The motion was objected to and denied. Defendant then put on its case in chief, which consisted solely of Dr. Akins' deposition. The only rebuttal attempted by plaintiff was the testimony of Dr. David B. Regan, which was objected to as improper and sustained. The testimony is included in the record by way of an offer of proof, however. The trial judge rendered judgment for defendant. Plaintiff then applied for a new trial, which was denied following a brief hearing.
Plaintiff brings this appeal presenting the following issues for review:
(1) Did the trial judge commit manifest error in concluding that plaintiff failed to prove that his disability, if any, arose out of his employment-related accident?
(2) Did the trial judge commit manifest error in finding that defendant did not breach its duty to pay plaintiff's medical bills timely?
(3) Did the trial judge commit error in not awarding plaintiff penalties and attorney's fees?
(4) Did the trial judge commit error in not allowing plaintiff to reopen his case after he rested?
(5) Did the trial judge commit error in not requiring defendant to answer interrogatories propounded after plaintiff rested his case on November 30, 1979, but prior to resumption of the trial on February 15, 1980?
(6) Was error committed by not allowing plaintiff to use Dr. Regan as a rebuttal witness?
(7) Did the trial judge err in denying plaintiff a new trial?
We will treat these issues in the order in which they are listed.

(1)
Plaintiff had six physicians subpoenaed for November 30, 1979, five of whom were served with notice to appear. The only one of them called to the witness stand was Dr. C.C. LaBorde, whose testimony was of very limited value due to his extremely minimal involvement with plaintiff. It is not known whether the other four physicians responded to their subpoenas, but the record is silent as to any efforts to get them to Court if they did not respond. On that day, November 30, 1979, plaintiff's counsel requested an instanter subpoena for Dr. Neil Rogers, a chiropractor who had treated plaintiff a number of times over a period of months, which fortunately for plaintiff the trial judge issued, and which fortunately for plaintiff was executed. Dr. Rogers' testimony was the only evidence of a medical nature to corroborate the lay testimony of plaintiff and his wife relative to his complaints.
In any event, as stated earlier, there is no dispute that the accident complained of occurred on October 13, 1977 during the course and scope of plaintiff's employment with defendant. The trial judge concluded that plaintiff was injured as a result of the *1085 accident, but was unable to conclude just what the extent of the injury was. Apparently the court was of the view that plaintiff suffered from some disability (to what extent is not known) at the time of trial, although he did not specifically come to that conclusion, but he did not feel that plaintiff met his burden of proving its connexity with the work-related accident. That plaintiff has this burden is academic. Soileau v. Bituminous Casualty Corporation, 348 So.2d 1313 (La.App. 3rd Cir. 1977); Aleman v. Lionel F. Favret Co., Inc., 338 So.2d 785 (La.App. 4th Cir.1976); appellate judgment set aside on facts, and trial court judgment reinstated, 349 So.2d 262 (La. 1977). Considering that the trial judge had to balance the testimony of plaintiff, his wife and a chiropractor, Dr. Rogers, on the one hand, against the testimony of an orthopedic surgeon, Dr. Akins, and another physician, Dr. Gold, whose report is in evidence, on the other hand, along with the adverse presumption which attaches to plaintiff's failure to call the many medical witnesses who were in a position to know his condition (Mitchell v. Keyes Fibre Company, 281 So.2d 815 (La.App. 3rd Cir.1973); Stockstill v. Barge Thompson Corporation, 184 So.2d 98 (La.App. 4th Cir.1966), it would have been extremely reasonable for the trial court to have firmly concluded that plaintiff had not met its burden of showing any disability at all, much less connexity between a disability and the accident.

(2)
The resolution of the preceding issue tends to limit the medical expenses of plaintiff for which defendant is responsible. Nevertheless, the evidence is that defendant paid all of plaintiff's medical bills which were submitted to it. Plaintiff complains in brief that defendant's payment of bills totalling $5,619.99 was made only ten days prior to trial. That is not what the evidence shows. The evidence is to the effect that payments were made at varying times, but that the compilation of total bills and total payments was provided to defendant's attorney approximately two weeks prior to trial. (T. p. 63). The only evidence of any other medical bills of plaintiff not paid by defendant were bills not submitted to defendant, not proven to have been submitted to defendant (Dr. C. C. LaBorde's bill for $50.00), and Dr. Rogers' bill for supplemental services submitted on November 30, 1979 (the date of trial; the very date on which he was testifying about it). Mr. Nathan Douget, a representative of Aetna Life and Casualty Company which handled these claims for defendant, called by plaintiff, specifically testified that all bills had been paid, as far as he knew.
There was no error in the trial judge's finding that no proof was offered to show that defendant failed to timely pay medical expenses which it had a duty to pay.

(3)
Considering the preceding discussion, and considering further the uncontradicted testimony of John C. Rhoden, defendant's Employee Relations Manager, that compensation payments were terminated on June 27, 1978 on the basis of a report from Dr. Thomas C. LaBorde, plaintiff's physician, to the effect that plaintiff could return to work, it cannot be said that defendant was arbitrary, capricious, or without probable cause in terminating benefits. The trial judge was correct in refusing to award penalties and attorney's fees.

(4)
Plaintiff's attorney knew or should have known of the available medical evidence well in advance of trial. The record reflects that plaintiff had some psychiatric and/or psychological testing as a result of physician referral well in advance of trial. Yet plaintiff waited until after his case was rested to see Dr. Regan, a psychiatrist, for the first time. Then when it became apparent that Dr. Regan's testimony might be helpful to him, he apparently filed a written motion shortly in advance of the trial resumption date for the purpose of reopening his case, which was fixed for hearing on *1086 the resumption date.[1] It was a proper exercise of the trial court's discretion to deny the motion. To do otherwise would have had the effect of depriving defendant of pre-trial discovery and time to develop possible contradictory evidence or have plaintiff examined by a psychiatrist of its own choice; or else result in a continuance to allow for these things, thereby wasting a day on what is probably a very busy court docket and further delaying the disposition of the matter. It should also be noted that plaintiff announced readiness for trial on November 30, 1979. Actually, the Court below was generous toward plaintiff in its exercise of discretion, as in the granting of plaintiff's requests for instanter subpoenas on November 30, 1979.

(5)
Although it is alluded to in both briefs, we cannot find a refusal on the part of the trial court to require defendant to answer plaintiff's interrogatories. We cannot find that this issue was taken up in the courtroom at all. If we are correct, then nothing is presented to us by way of review of a ruling of the trial court. To dispose of the matter, however, we will assume that the trial court affirmatively ruled that defendant did not have to answer interrogatories propounded by plaintiff to defendant after plaintiff rested his case on November 30, 1979, but prior to resumption of trial on February 15, 1980. Specifically, these interrogatories were filed on December 5, 1979. Defendant filed a response timely on December 19, 1979, objecting to all of the interrogatories on the basis that they were filed after plaintiff rested his case (LSA-C. C.P. art. 1458). The record reflects that a copy of the response was forwarded to plaintiff's counsel. Plaintiff did not apply, with due notice, for an order compelling discovery or fix the objections for hearing as he is procedurally required to do. (LSA-C.C.P. art. 1469). To complain on the trial date, if in fact he did, is too late. Of what benefit could even a favorable ruling have been to him on that date? Interrogatories are a discovery device designed for use in preparation for trial; and discovery should be complete sufficiently in advance of trial. No error is presented in connection with these interrogatories.

(6)
Apparently plaintiff intended to use Dr. Regan to set up a disability claim based on some sort of a traumatic neurosis theory. He did not do so in his case in chief and defendant did not defend against it. There was no basis, therefore, to use it in rebuttal. The use of Dr. Akins by the defendant was to contradict plaintiff's evidence with regard to physical injury and disability. Dr. Regan's testimony as reflected by the offer of proof was not in proper rebuttal of Dr. Akins' testimony. It was not made necessary by evidence presented in defendant's case in chief. The trial judge properly excluded it. The record reflects that plaintiff was or should have been alerted to the prospect of psychiatric evidence well in advance of trial. He chose not to develop it in his trial preparation and accordingly he presented no evidence in that area. It was only after plaintiff rested his case on November 30, 1979, that he first saw Dr. Regan, on January 8, 1980. The evidence was available prior to trial with the use of due diligence and was not availed of. Moreover, it would have been grossly unfair to defendant to allow such evidence on rebuttal when defendant would have had no opportunity to challenge or contradict it afterward.

(7)
The foregoing discussion makes it clear that there was no basis for granting a new trial herein. Plaintiff's argument focuses on the peremptory ground outlined in LSA-C.C.P. art. 1972(2):
"Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have attained before or during trial; ..." *1087 There must be a clear showing, not only that the evidence was discovered after trial, but that every reasonable and diligent effort was made to procure it before trial. Campbell v. Libersat, 203 So.2d 730 (La. App. 3rd Cir.1967); Deville v. Allstate Insurance Company, 242 So.2d 909 (La.App. 3rd Cir.1971). Such was not the case here.
There being no reversible error with respect to any of the questions complained of, the judgment of the trial court is affirmed, plaintiff-appellant to bear the costs in connection with this appeal.
AFFIRMED.
NOTES
[*] Judge C. Thomas Bienvenu, Jr., Sixteenth Judicial District Court, Parish of St. Martin, presided as Judge Ad Hoc in this decision.
[1] We are unable to find such a pleading in the record, but since both counsel acknowledged it at the time of their oral arguments before us, we will assume it to have been filed.