SHORTESS, Judge.
David Liner (plaintiff) filed suit against Elwood Scoby and the City of Houma (defendant) for damages he sustained in a vehicular collision, which occurred on November 19, 1979. Plaintiff was injured when his motorcycle collided with a dump truck owned by defendant and operated by its employee, Elwood Scoby. At trial the parties stipulated that the sole and proximate cause of the accident was the negligence of the defendant driver in failing to obey a stop sign. Thus, quantum was the only issue to be determined. After hearing all the evidence, the trial judge rendered and signed judgment awarding plaintiff the sum of $21,402.99, itemized as follows: $12,-000.00 for pain and suffering and mental anguish; $5,400.00 for loss of earnings; $2,200.00 for property damages; and $1,802.29 for medical expenses. Thereafter, plaintiff’s motion for a new trial was denied and he perfected this devolutive appeal.
There are two issues raised on appeal:
(1) Whether the trial judge erred in refusing to allow Dr. Richard Landry, plaintiff’s witness, to testify concerning an examination he conducted on plaintiff during the noon recess on the day of trial; and
(2) Whether the trial judge abused his discretion in the amount awarded plaintiff.
ISSUE ONE
The first issue involves the trial judge’s ruling that certain testimony sought from Dr. Richard Landry was inadmissible. Dr. Landry had seen plaintiff in the Terre-bonne General Hospital shortly after the accident. He was called by Dr. Felix Math-ieu, the attending physician, on November 20, 1979, for consultation. Dr. Landry’s next examination was in his office during the noon recess on the first day of trial, December 2, 1980. Testimony concerning this latter examination was excluded by the trial judge. The court stated:
“That does not allow counsel, opposing counsel, anything but surprise. He is in no position to cross examine this doctor now.
“... it deprives opposing counsel of the opportunity of proper cross examination of this witness. And I maintain the objection, and I order that there be no further questions asked of this witness regarding the examination by the witness of the plaintiff on this day.” (Tr. 198)
Plaintiff maintains that this evidence should have been considered in determining the amount of his award.
La.C.C.P. art. 1631 provides in pertinent part:
“The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.”
In reviewing the record, we note the pretrial procedure and discovery mechanisms utilized in this suit. The defendant propounded interrogatories on May 15, 1980, requesting that plaintiff reveal the names of any of his treating physicians, their treatments and examinations, and the results thereof, in connection with the case. La.C.C.P. art. 1457. Plaintiff failed to name Dr. Landry in any of his responses to these interrogatories. Further, defendant’s interrogatories contained the traditional clause, sanctioned by La.C.C.P. art. 1428, requiring plaintiff to supplement his answers if further information became available.
*95 Interrogatories are a discovery device designed for use in the preparation of a case for trial, and discovery should be completed sufficiently in advance of trial. LeBlanc v. Consolidated Aluminum Co., 401 So.2d 1082 (La.App.3d Cir.1981), writ denied, 409 So.2d 617 (La.1981). The trial judge concluded that plaintiff had recovered and was able to return to work on May 17, 1980. The only occasion on which plaintiff sought medical attention after May 17 was on July 31, 1980, when he went to the emergency room complaining of pain in his knee. From July 31 until the date of trial, December 2, plaintiff did not see a physician regarding his medical condition. In arguing for admissibility, plaintiffs counsel stated:
“We became concerned, during the course of this trial, that there was no recent medical examination of Mr. Liner. The Court indicated that it was concerned with what is Mr. Liner’s medical condition today.[1]
“Ms. Guidry and I discussed the matter at lunch; I made the determination for her to call Dr. Landry and see whether or not Dr. Landry could see Mr. Liner today, examine him today and give a medical opinion in Court this afternoon as to his condition.”
Plaintiff’s counsel has offered no explanation and we see no reason why a medical examination could not have taken place before trial. Had this been done, defendant would have been entitled to updated medical information, as plaintiff had a duty to supplement his answers to defendant’s interrogatories. Further, defendant could have properly prepared his cross examination of this witness and had an opportunity to call rebuttal witnesses as he deemed necessary.
In preparation for trial, a pretrial conference was scheduled for 11:00 a.m. on November 25, 1980, one week before the trial date. On November 25, the trial judge filed a Pretrial Procedure Memorandum requiring that both attorneys submit pretrial statements which were to include:
“10. A list of witnesses (except those called for impeachment) each party may call, and a short statement as to the nature (but not as to the content) of their testimony.”
Plaintiff complied with this memorandum by filing a pretrial statement, wherein he listed Dr. Landry as a medical expert whom he might call. Plaintiff maintains that this provided defendant with sufficient information relative to Dr. Landry’s testimony, including his examination of plaintiff during the noon recess. We disagree.
Defendant was appraised of Dr. Landry’s existence as a consulting physician when he took the deposition of Dr. Felix Mathieu. He was informed of plaintiff’s intention to call Dr. Landry as a witness when plaintiff filed his pretrial statement. However, defendant’s knowledge of Dr. Landry’s medical treatment was limited to Dr. Landry’s consultation the day after the accident. Until the day of trial, this was Dr. Landry’s only exposure to plaintiff’s injuries. The commencement of trial cuts off formal discovery. Therefore, once trial began, defendant was reasonable in assuming that plaintiff’s direct examination of Dr. Landry would be limited to his hospital consultation. Defendant was unfairly surprised when confronted, during direct examination, with the information that Dr. Landry performed a medical examination during the noon recess, apparently without the knowledge of the trial court.
In Powell v. Giddens, 271 So.2d 596 (La.App.1st Cir.1972), this court affirmed a trial judge’s denial of a motion for continuance, as the trial judge acted within his broad discretion. We stated:
*96 “The trial courts are under a duty to schedule their trial work and dispose of same expeditiously to alleviate the continuous problem of crowded dockets. Trial counsel, as officers of the court, have corresponding duties of diligence, and to make a good-faith effort to assist the courts with the disposition of cases set for trial.” 271 So.2d at 598.
Under these facts and circumstances, we find the trial judge was within his discretion in refusing to allow this additional testimony.
ISSUE TWO
Plaintiff challenges the sufficiency of the trial court’s award as to general damages and loss of wages. The trier of fact is afforded broad discretion in making an award of general damages. La. Civil Code art. 1934, subd. 3. Only when the record reveals a clear abuse of this discretion is an appellate court justified in disturbing a trial court award. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); and Autin v. Allstate Insurance Company, 402 So.2d 219 (La.App.1st Cir.1981). In Bitoun, supra, the Louisiana Supreme Court stated:
“The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down." 302 So.2d at 279. (Emphasis added.)
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Louisiana Supreme Court set out the standard to be followed by appellate courts in reviewing trial court damage awards. The court stated:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.” 373 So.2d at 501.
We have already determined that certain parts of Dr. Landry’s testimony were properly held inadmissible. Thus, we will examine the award of the trial judge, in light of the other evidence contained in the record.
At the time of the accident, plaintiff was 19 years old, single, and employed as a deckhand at Gulf International Marine, Inc. Plaintiff stated that immediately after the accident, when he regained consciousness, he was lying in the road and could see blood and feel pain, especially in his knee and wrist. He was immediately taken by ambulance to the Terrebone General Hospital, where he was seen by Dr. Mathieu. Plaintiff sustained a fractured left wrist and a torn medical meniscus of the left knee, as well as facial abrasions and cuts. Plaintiff testified he could not stand too long and still had difficulty walking, even at the time of trial.
By deposition, Dr. Mathieu testified that plaintiff’s treatment on the night of the accident involved sewing of the lacerations of the knee, placement of the knee in a knee splint and also placing a splint on the left arm. He stated that plaintiff was hospitalized from November 19 to November 24,1979; that he was given pain medication and antibiotics while in the hospital; that these medications were continued after dis *97 charge; and that when plaintiff left the hospital, his leg was in a cast, which was to remain for approximately six weeks.
Plaintiff consulted Dr. Steven Driscoll, a resident in orthopedic surgery at the South Louisiana Medical Center, on January 23, 1980, and Dr. Driscoll recommended and scheduled knee surgery in February. However, plaintiff failed to appear, and the surgery was rescheduled and performed on March 19, 1980. Two surgical procedures were performed: (1) an anthroscopy — the insertion of an optical instrument into the knee for observation purposes; and (2) an arthrotomy — the excising of torn cartilage. There were no complications. Normal recovery involves a recuperative period of eight to ten weeks. Dr. Driscoll stated that after recovery, return to normal activity was possible; that the knee may be slightly less stable even with full recovery; and that plaintiff’s period of recuperation might be longer due to his obesity and the fact that his knee had been in a locked position several months prior to surgery. Dr. Dris-coll saw plaintiff again on May 12, 1980, at which time he felt plaintiff was making a good recovery. Plaintiff was not officially discharged at that time; however, he failed to keep his June 3,1980, scheduled appointment and did not return to Dr. Driscoll thereafter.
Plaintiff went to the South Louisiana Medical Center emergency room July 31, 1980, complaining of pain in his knee. Plaintiff was seen by a Dr. Gumbel, who prescribed some pain medication and set an appointment for plaintiff on August 6, 1980. Plaintiff failed to keep this appointment, also.
This evidence supports the finding of the trial court that plaintiff had recovered as of May 17, 1980. The trial judge was not clearly erroneous in construing plaintiff’s consistent failure to keep appointments and lengthy periods without complaints, as indications that plaintiff was not continuing to have serious problems and did not feel the need for further medical treatment. The trial judge found that, “.. . plaintiff failed in his duty to himself and to the defendants to attempt rehabilitation and mitigation of damages.” We cannot say he was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find that under these facts, an award of $12,000.00 in general damages is not an abuse of the trial court’s wide discretion. Reck v. Stevens, supra.
Evidence as to loss of wages included the following: plaintiff testified that he is presently employed as a truck driver for Southland Hot Shot Company, making approximately $90.00 to $100.00 per week; that he sometimes has trouble working due to pain in his knee; that since his high school graduation in 1978, he has worked various jobs in warehouses and on boats; that his last job before the accident was as a deckhand for Gulf International Marine, making $45.00 per day, and that he has not attempted to return to that job due to instability in his knee. He stated that he had majored in nautical science in high school and had planned to become a tugboat captain.
Don Domangue, president of Gulf International, stated that plaintiff had not reapplied for work, although his company often hires handicapped persons, including deckhands with some degree of knee instability. He stated that his company would consider hiring someone with a knee which gives out occasionally and allow them the opportunity to attempt the work.
The trial court stated:
“It is proved by a preponderance of the evidence that the plaintiff never attempted to become re-employed by his former employer and it is alternatively shown by the evidence that even if he had a disability or a limitation that his former employer and others employ successfully and comfortably many handicapped individuals who were their former employees.”
We agree with that finding and also find that the record amply supports the trial judge’s award of $5,400.00 for loss of earnings occasioned to plaintiff from November 19, 1979, through May 17, 1980, which was calculated on the wage schedule at plain *98 tiff’s last job with Gulf International, prior to the accident.
Accordingly, we affirm the decision of the trial court which disallowed the testimony of Dr. Landry’s examination of plaintiff during the noon recess on the day of trial. Further, we affirm the award of the trial court as to general damages and as to loss of earnings. All costs of this appeal are assessed to plaintiff.
AFFIRMED.

. On November 12, 1980, the deposition of Dr. Stephen Robinson, an orthopedic surgeon, was taken. It was introduced at trial in lieu of his court appearance. Dr. Robinson is associated with the South Louisiana Medical Center. He last saw plaintiff on December 19, 1979, and would not comment on counsel’s request for an opinion as to whether plaintiff had any continued knee pain or significant disability. This deposition should have prompted an updated orthopedic examination.