632 So.2d 339 (1993)
OUR LADY OF THE LAKE HOSPITAL, INC.
v.
CARBOLINE COMPANY, et al.
No. CA 92 2121.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Rehearing Denied February 23, 1994.
*340 Eugene Groves, Baton Rouge, for plaintiff-appellant Our Lady of the Lake Hosp., Inc.
Dorothy Thomas, and John Heinrich, Baton Rouge, for defendant-appellee Dow Chemical Co.
Paul Spaht, Baton Rouge, for defendant-appellee Carboline Co.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment of the trial court, in favor of the defendant, Carboline Company (Carboline), and against plaintiff, Our Lady of the Lake Hospital, Inc. (OLOL), sustaining Carboline's peremptory exception pleading the objection of prescription and dismissing OLOL's suit with prejudice. From this judgment, OLOL appeals. For the following reasons, we vacate the judgment and remand to the trial court for further proceedings.

*341 FACTS AND PROCEDURAL HISTORY
On September 25, 1991, OLOL filed a petition for damages against Carboline, alleging that, as a result of a fireproofing product known as Pyrocrete 102, manufactured by Carboline and installed and incorporated into OLOL's building, the structural steel beams and supports were severely damaged.[1] In its petition, OLOL also alleged that at the time of the application of Pyrocrete 102, or at some point thereafter, Carboline had knowledge of the corrosive nature of this product, and failed to provide and/or intentionally withheld this information from OLOL. Carboline answered and filed exceptions pleading the objection of prescription and peremption.[2] A hearing on the exceptions was held on July 10, 13, 14, and 15, 1992. Evidence was adduced at the hearing to show the following series of events.
In 1975, during the construction of OLOL's hospital building, Pyrocrete 102 was applied to the structural steel beams and supports, as a fireproofing measure. After occupying the hospital in 1978, OLOL began experiencing problems with leaks in the building and cracks in the pre-fabricated brick panels on the building's exterior. Mr. L.E. Miremont, an engineer involved in the original construction of OLOL, investigated the problems. His investigation revealed that the pre-fabricated brick panels contained a product named Sarabond, manufactured by Dow Chemical Company, and that Sarabond was causing similar problems in buildings across the country. The pre-fabricated brick panels had been placed below the windows of the building, with laid-in-place brick used elsewhere. In an effort to resolve the problems, the hospital began replacing the pre-fabricated brick panels. On January 3, 1983, Daryl B. Patin, was retained to serve as civil and structural engineer on the replacement project.
By letter dated June 3, 1983, C.H. Wang, an engineer employed by Daryl B. Patin, notified Miremont that "seemingly excessive corrosion" of the steel beams behind the pre-fabricated brick panels was observed, and that the corrosion was observed mostly on the surfaces where Pyrocrete 102 had been applied. Based on these observations, Wang contacted a representative of Carboline.
On July 7, 1983, Sue Hartenbach, a technical service engineer for Carboline, met with Miremont and Wang in Baton Rouge, and discussed the corrosion discovered behind the damaged pre-fabricated brick panels, and the steps being taken to remedy the problem. Hartenbach testified that at the meeting, she was questioned regarding the corrosive nature of Pyrocrete 102. According to Hartenbach, she explained that use of the product in a moist, humid environment required priming the steel and topcoating to prevent corrosion of the underlying steel by moisture, measures which had not been taken in this case. Wang outlined to Hartenbach the measures being taken by OLOL to correct the problem. These measures included inspecting the exposed steel after removal of the damaged pre-fabricated panels. Where corrosion was discovered, the steel was wire-brushed and primed. To ensure that the problems caused by excessive moisture leaking through the panels would not re-occur, the new brick panels were double caulked when set in place. Also, the entire building was re-caulked, and a waterproofing film was applied over all of the masonry.
Following the meeting, Hartenbach visited the job site and observed the change-over of one of the panels, as described above. Hartenbach *342 then concluded that OLOL was taking adequate measures to combat and remedy the corrosion problems. Miremont testified that during the meeting with Hartenbach, there was no suggestion that there might be a potential risk to the structural steel of the building, that the corrosion might continue indefinitely, or that the measures taken by OLOL were inadequate. Hartenbach did not suggest that OLOL inspect the steel structure behind the laid-in-place brick or check for possible corrosion. After the meeting with Hartenbach, the panel replacement project continued, and was completed in September of 1983. At this point, OLOL believed that following the panel replacement project, the building had been restored to its original design and useful life.
However, in October of 1990, hospital maintenance personnel reported to Philip J. Crochet, III, assistant administrator of plant and environment at OLOL, that there was serious cracking of laid-in-place bricks and displacement of bricks in the building. Crochet contracted with Southern States Masonry for assistance in determining the cause of the brick failure. OLOL eventually discovered that the structural beams supporting the roof girders were in an advanced state of corrosion, causing the beams to expand and crack the bricks. Further investigation revealed that the probable cause of the corrosion was the Pyrocrete 102 coating the beams. Consequently, on September 25, 1991, OLOL filed this suit against Carboline.
Based on the documentary evidence and testimony presented at the hearing on the exceptions, the trial court maintained Carboline's exception pleading the objection of prescription. In its oral reasons for judgment, the trial court concluded that in 1983, OLOL had sufficient knowledge to indicate that Pyrocrete 102 may have been an additional cause of corrosion of the structural steel in the hospital building, and to apprise OLOL of its potential claim against Carboline. In determining that the doctrine of contra non valentem did not apply to suspend the running of prescription, the trial court stated, as follows:
The court, with respect to the Lake's claim of failure to warn, finds Carboline did nothing deliberately to misrepresent its product. It was not required in 1983 to prove that its own product was defective. That was the Lake's burden and that of any plaintiff.
The court herein determines that the doctrine of contra non valentem does not apply in this case and the exception of prescription is hereby and therefore maintained....
On July 21, 1992, a judgment was signed by the trial court, maintaining the exception pleading the objection of prescription, and dismissing plaintiff's suit. This appeal by OLOL followed.
While the matter was pending on appeal, OLOL filed, with this Court, a motion to remand the case to the trial court for amendment of its pleadings and for the introduction of newly discovered evidence, and a supplemental motion to remand, which we referred to the merits. These motions allege that after judgment was rendered in the trial court, OLOL discovered the existence of documents in Carboline's possession which show that at the time Carboline consulted with OLOL in 1983, Carboline had actual knowledge of the severe corrosive effect of Pyrocrete 102, which was not furnished to OLOL, despite OLOL's discovery requests for such information.[3] OLOL contends that these documents are relevant to establish the applicability of the doctrine of contra non valentem and to establish the continuous wrongful conduct by Carboline, suspending the running of prescription until such time as OLOL learned it had been injured by Carboline's failure to disclose.

*343 MOTION TO REMAND
Courts of appeal have the power under LSA-C.C.P. art. 2164 to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. Mack v. Southern Farm Bureau Casualty Insurance Company, 434 So.2d 594, 595 (La.App. 1st Cir.1983), writ denied, 449 So.2d 1346 (La.1984). A remand for the introduction of additional evidence is warranted only when the new evidence is likely to affect the outcome of the case. White v. West Carroll Hospital, Inc., 613 So.2d 150, 154 (La.1992). However, a case ordinarily will not be remanded to allow a party to produce evidence which was available in the first instance. Gillaspie v. Mittelbronn, 326 So.2d 538, 544 (La.App. 4th Cir.), writ refused, 329 So.2d 470 (La. 1976).
In its reasons for judgment, the trial court set forth the applicable prescriptive periods as follows:
A products liability case for damage to immovable property is governed by a one year prescriptive period provided by Civil Code article 3493, which commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.
Likewise, a products liability case based upon a failure to warn is governed by a liberative prescription [sic] period of one year, provided by Civil Code article 3492, which commences to run from the day injury or damage is sustained.
In either instance, the prescriptive period does not run until there is an actual or constructive notice of the tortious act resulting in damage and the causal connection between the act and the damage.
* * * * * *
Because a manufacturer is presumed to have notice of vices in his product, an action for redhibition must be commenced within one year of discovery of the vice. Civil Code article 2546.
Contra non valentem is a judicially created exception to the general rule of prescription. Rajnowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990). The doctrine of contra non valentem prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.1993). One situation in which this doctrine is applicable is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. Thus, if the debtor's conduct constitutes concealment, misrepresentation, fraud, or other ill practices that prevents plaintiff from availing itself of its cause of action or lulls plaintiff into a false sense of security, the doctrine of contra non valentem is triggered. Rajnowski, 564 So.2d at 674; Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034, 1056-1057 (La.1987).
Moreover, under Louisiana products liability law, a manufacturer of a product who, after the product has left its control, acquires knowledge of a characteristic of the product that may cause damage must act reasonably to provide an adequate warning of such characteristic and its danger to users. As long as a defendant with a duty to disclose possesses knowledge and yet fails to act, the tort is a continuing one which renews itself from day to day. Prescription in such a case will not begin to run until the plaintiff learns that it has been injured by the failure to disclose. Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1386 (La.1990); Plaquemines Parish Commission Council, 502 So.2d at 1059.
In this case, OLOL obtained documents subsequent to the judgment of the trial court, which indicate that as early as 1979, the Board of Directors of Carboline was informed that the company was "suffering severe corrosion problems in the field with [Carboline's] primary product, PYROCRETE 102;" that these problems were occurring even where the steel had been primed; and that Carboline began investigating the extent of the problems occasioned by this product.
At a minimum, the documents suggest that Carboline's failure, in 1983, to apprise OLOL of the severe corrosive nature of Pyrocrete 102, and resulting problems associated with its use, was not due to Carboline's ignorance *344 of such problem, but instead, may have been the result of deliberate concealment, misrepresentation or fraud. Arguably, these documents further suggest that Carboline's action of assuring OLOL representatives that the measures undertaken were sufficient to correct the problem may have had the effect of lulling OLOL into a false belief that the corrosion problems had been effectively eliminated. Inasmuch as the trial court's finding that "Carboline did nothing deliberately to misrepresent its product" was made without the benefit of this information, we find that a remand, for consideration of this crucial evidence as it applies to the doctrines of contra non valentem and continuing tort, is mandated in the interests of justice. See Gillaspie, 326 So.2d at 544-545.
Because we have determined that remand of this case to the trial court is necessary, we pretermit discussion of the assignments of error raised by OLOL.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court maintaining Carboline's peremptory exception, raising the objection of prescription, is hereby vacated. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein. All costs of this appeal are to await final disposition of this matter.
MOTION GRANTED; JUDGMENT VACATED, AND REMANDED.
NOTES
[1] OLOL amended its petition to name as additional defendants, Henningson, Durham & Richardson, Inc. (Henningson), the architects; Southern Builders, Inc. (Southern), the general contractor on the project; and The Bolton Company, the sub-contractor who applied the fireproofing materials to the structural steel beams in the building.
[2] Together with its answer, Carboline filed a cross-claim against Henningson, Southern, and The Bolton Company. The cross-claim against Henningson and The Bolton Company was subsequently dismissed. Carboline also filed a third party demand against Sun Company, Inc., and Dow Chemical Company (Dow). Dow responded with exceptions pleading the objection of Res Judicata and No Cause of Action, which were noticed for hearing on July 10, 1992, together with the hearing on Carboline's exceptions. The trial court did not rule on Dow's exceptions, finding them moot as a result of the court's ruling on Carboline's exception pleading the objection of prescription.
[3] In its memorandum in support of the motion to remand, OLOL states that the newly discovered evidence came to the hospital's attention when a witness in another case against Carboline gave OLOL's attorney a copy of an internal memorandum of Carboline. In the memorandum accompanying OLOL's first amended and supplemental motion to remand, OLOL states that following its discovery of the internal memorandum, OLOL made further inquiry into the other case against Carboline, and discovered other documents which had not been made available to OLOL through its discovery request.