774 So.2d 1240 (2000)
Michael Raymond GLEASON and Kim Allen Gleason
v.
NUCO, INC., Neher Holding Corporation and William R. Mullins, III
No. 99 CA 2954.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1241 Robert J. Burns, Jr., Baton Rouge, for PlaintiffsAppellants Michael Raymond Gleason and Kim Allen Gleason.
Jessie McCrory LeBlanc, Gonzales, for DefendantAppellee Parish of Ascension.
Before: WHIPPLE, FOGG, and CRICHTON,[1] JJ.
FOGG, J.
At issue in this case is whether the discretionary acts doctrine, LSA-R.S. 9:2798.1 et seq., applies to the facts of this case to insulate the Parish of Ascension from liability for flooding of the plaintiffs' residence. The trial court granted summary judgment in favor of the Parish of Ascension. For the following reasons, we affirm.
On August 15, 1997, Michael Raymond Gleason and Kim Allen Gleason filed a petition for rescission of sale and, alternatively, for reduction in purchase price or damages, and named as defendants NUCO, Inc., Neher Holding Corporation, and the Parish of Ascension. Therein, the plaintiffs alleged that, on August 16, 1996, they purchased a home at 39322 Tommy Moore Road in Woodrun Subdivision in Gonzales, Louisiana from NUCO. Neher Holding Corporation was the developer of the subdivision. The property subsequently flooded.
In their petition, the plaintiffs asserted that Ascension Parish is liable for damages resulting from the flooding of their property because it is responsible for construction, maintenance, and improvements of drainage facilities in Ascension Parish; its agents and employees have known for many years of the propensity of Woodrun Subdivision and the surrounding area to flood; as early as 1990, Ascension Parish knew the Calbasse drainage canal was insufficient in its construction and design to adequately drain the area now known as Woodrun Subdivision; and despite this knowledge, Ascension Parish allowed and authorized the proliferation of new subdivisions including Woodrun Subdivision without taking any steps to remedy the dangerous drainage situation.
Ascension Parish responded with a motion for summary judgment, asserting its decision to approve the subdivision plat falls within the ambits of LSA-R.S. *1242 9:2798.1, and it is, accordingly, immune from liability for such a decision. The trial judge granted the motion and rendered summary judgment in favor of Ascension Parish, dismissing the plaintiffs' claims against it. Plaintiffs appeal that judgment.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). Once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The Louisiana discretionary acts doctrine is found in LSA-R.S. 9:2798.1, which provides, in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
This statute protects a governmental agency from liability at the policy making or ministerial level, not at the operational level. Fowler v. Roberts, 556 So.2d 1 (La.1989). The Fowler court set forth a two step analysis to be employed when determining whether the statute applies to a particular case. The court must first decide if the governmental action is a matter of choice, and, if so, whether the government's selection of alternative choices was policy based. Fowler, 556 So.2d at 15.
Thus, discretionary immunity will not apply when a specific course of action is prescribed because the employee has no rightful option but to adhere to the directive. However, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. Rick v. State Dep't of Transp., 93-1776, 93-1784 (La.1/14/94), 630 So.2d 1271; Fowler, 556 So.2d at 15. When the doctrine applies, the employee or agency is insulated from liability; when it does not apply, the employee or agency is liable for any negligence. Cormier v. T.H.E. Ins. Co., 98-2208 (La.9/8/99), 745 So.2d 1.
Therefore, initially we must decide whether the approval of the subdivision plat was a matter of choice. Woodrun Subdivision, First Filing, was approved as a simple division of property by Harvey Kling, the Chairman of the Ascension Parish Planning Commission, on June 30, 1994. In his deposition, Kling defined a simple division of property as anything *1243 developed on an existing road, without additional construction, roads or ditches. Ascension Parish Subdivision Regulation 10.105 defines a minor subdivision as:
Any subdivision fronting on an existing publicly dedicated street or streets, not involving any new street or road, or the extension of public facilities, or the creation of any public improvements, and not adversely affecting the remainder of the parcel or adjoining property, and not in major conflict with any provision or portion of the master plan, or these regulations.
Kling testified that a simple division of property was the same as a minor subdivision as defined in the Ascension Parish Subdivision Regulations.
Although he could not specifically recall the first filing of Woodrun Subdivision, Kling described the procedure utilized in reviewing an application for approval of a simple division of property or a minor subdivision. Initially, the matter is reviewed at a weekly meeting. Present at the meeting are Kling, the parish engineer, the head of the Department of Public Works, and the developer. The developer presents the plat. If all agree that the requirements for a simple subdivision are met, that the remainder of the parcel and adjoining lands are not adversely affected, and that there is no major conflict with the master plan, then the plat is approved by the Chairman of the Planning Commission. Subsequently, the plat approval is ratified at the next meeting of the entire Commission. It is clear that the Chairman of the Planning Commission exercised discretion and made a judgment call in approving the plat of Woodrun Subdivision, First Filing. This conclusion is further supported by the provisions of LSA-R.S. 33:101.1 which provides that "the act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission...."
Having determined that the approval of the plat of Woodrun Subdivision, First Filing required discretion on the part of the Chairman of the Planning Commission, we must determine whether that discretion was grounded in social, economic or political policy. When reviewing an application for approval of a minor subdivision, the Planning Commission must determine whether the subdivision will adversely affect the remainder of the parcel or adjoining property, and whether the subdivision will be in major conflict with any provision of the master plan of the Parish of Ascension. Clearly, these factors require the weighing of social, economic and political policies.
Therefore, applying this test set forth in the Fowler case to the facts of the instant case, we find the approval of a simple division of property or a minor subdivision is a matter of choice as no statute, regulation, or policy prescribes a specific course of action with respect to the approval. This determination is within the realm of discretionary functions grounded in social, economic and political policy. Therefore, Ascension Parish is immune from liability for such decisions under LSA-R.S. 9:2798.1.
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed against the appellants.
AFFIRMED.
NOTES
[1] Judge Scott J. Crichton of the First Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.