786 So.2d 955 (2001)
Forrest and Jill RABURN, Plaintiffs-Appellants,
v.
Mayor "Bo" WILLIAMS, Tom Dark, Ali Mustapha, Mayor Keith Hightower and the City of Shreveport, Defendants-Appellees.
Nos. 34,718-CA, 34,719-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*956 Michael A. Pitman, Bossier City, Counsel for Appellants.
Abrams & Lafargue by Julie Mobley Lafargue, Shreveport, Counsel for Appellees.
Before WILLIAMS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
Forrest and Jill Raburn (the "Raburns") appeal the trial court's grant of summary judgment in favor of Mayor "Bo" Williams, Mayor Keith Hightower, Tom Dark, Ali Mustapha ("Mustapha") and the City of Shreveport (collectively, the "City"), regarding the issuance of building permits issued by the City to Mr. and Mrs. Brad DeCharles (the "DeCharleses") for the construction of their home. Finding no error by the trial court, we affirm.

FACTUAL HISTORY
The Raburns own and reside in a home located at 2309 North Cross Drive, Shreveport, Louisiana. They also own a vacant lot located at 2319 North Cross Drive. In late February or early March of 1998, the Raburns noticed that several truckloads of dirt were being deposited at 2329 North Cross Drive, the vacant lot owned by the DeCharleses. Mr. Raburn, a certified civil engineer, believed that the dirt being deposited was being placed improperly inside the 177 contour line. The 176 contour line is the line developed by the Federal Emergency Management Agency ("FEMA") to designate the 100-year flood plain level, and the 172 contour line is the natural water level of Cross Lake. The dirt dumped on the DeCharleses' lot allegedly raised the level of their property approximately eight feet.
Based on his experience as an engineer and with the City, Mr. Raburn was of the belief that a City ordinance or policy existed against altering the natural level of property and/or construction inside the 177 contour line of Cross Lake, i.e., dirt fill could not be placed between the 172 and 177 contour lines. During the construction of their home, the Raburns allegedly had been prohibited by the City from raising the natural level of their property inside the 177 contour line, and they claim to have knowledge of other area residents who were similarly prohibited.
The Raburns investigated the situation and discovered that a permit had been issued to the DeCharleses by the Permits Department for the City. After City officials in both the Permits and Engineering Departments, respectively, researched the situation, the construction of the De-Charleses' home was allowed to proceed.

PROCEDURAL HISTORY
On August 20, 1998, the Raburns filed a Petition for Writ of Mandamus (the "Mandamus Action") against the City, wherein they claimed the City had wrongfully issued permits for the construction of the DeCharleses' home. The petition prayed that a writ of mandamus issue directing the City to deny the permits, or, in the alternative, to withdraw any permits that had been issued. At the time of filing the Mandamus Action, construction of the DeCharleses' *957 home had already begun-the foundation slab had been poured and the house was being framed; however, the Raburns did not seek injunctive relief to stop the construction.
Subsequently, the Raburns supplemented and amended their Mandamus Action, which in addition to adding newly-elected Mayor Keith Hightower as a defendant, also claimed that the filling of earth and concrete, and/or construction between the 176/177 and the 172 contour lines violated numerous revisions of the City's Code of Ordinances, as well as rules, regulations, policies, customs, habits and usages of the City and its officials and employees. The Raburns further claimed that the City acted arbitrarily and capriciously in issuing a building permit to the DeCharleses.
Later, on May 21, 1999, the Raburns filed a Petition for Damages (the "Tort Action") against the City, alleging that the City refused to properly and evenly enforce the City's Code of Ordinances, regulations, policies, habits and customs, which resulted in damage to the Raburns. As a result of the City's granting of the permits, the Raburns alleged the DeCharleses were improperly allowed to fill their lot which diverted the natural flow of water from the DeCharleses' lot to the Raburns' lot. Additionally, the Raburns claimed, the grant of the DeCharleses' building permit by the City allowed the DeCharleses to build a home which obstructed the Raburns' view of Cross Lake.[1]
On motion of the City and over the Raburns' objection, their Mandamus Action and Tort Action were consolidated.
The City then filed its Motion for Summary Judgment, which was granted by the trial court dismissing all of the Raburns' claims against the City with prejudice at the Raburns' cost. A subsequent Motion for New Trial by the Raburns was denied, and this appeal ensued.

DISCUSSION

Motion for Summary Judgment
As their first assignment of error, the Raburns submit that the trial court erred in granting the City's Motion for Summary Judgment because genuine issues of material fact exist which make summary judgment improper.
We review summary judgments de novo under the same criteria governing a district court's consideration of the appropriateness of summary judgment. Eichelberger v. Sidney, 34,040 (La.App.2d Cir.11/03/00), 771 So.2d 863, writ denied, 00-3476 (La.02/09/01), 785 So.2d 827.
A court shall render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See, La. C.C.P. art. 966(B). If the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for *958 one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that the adverse party will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. See, La. C.C.P. art. 966(C)(2). Finally, a party opposing summary judgment cannot rest on the mere allegations or denials of his pleadings but must present evidence which will establish that material facts are still at issue. See, La. C.C.P. art. 967; Demopulos v. Jackson, 33,560 (La. App.2d Cir.06/21/00), 765 So.2d 480; Louisiana Health Services and Indem. Co. v. Brown Builders, Inc., 32,575 (La.App.2d Cir.12/08/99), 747 So.2d 708.
Underlying both the Mandamus Action and the Tort Action is the claim by the Raburns that the City violated its own ordinances and policies in issuing building permits to the DeCharleses. Specifically, the Raburns maintain that (1) the actions by the DeCharleses in placing dirt fill between the 172 and 176/177 contour lines is prohibited by City ordinance(s), and (2) the City has traditionally prohibited other residents from taking the same actions as the DeCharleses. They argue that the City acted arbitrarily and capriciously in allowing the DeCharleses' building permits to fill their lot in such a manner when they, as well as other homeowners, have been denied the ability to take similar action.
Primarily, we note that the Raburns fail to point to any specific City ordinance which would have prohibited the specific actions taken by the DeCharleses regarding the elevation of their lot. Moreover, none of the deposition testimony of any of the witnesses discloses a particular ordinance violated by the City. Specifically, of the City officials deposed, none pointed to an ordinance, regulation, rule or statute which prohibited the placement of fill between the 172 and 176/177 contour lines. In fact, Mustapha and Frank Morris ("Morris") both testified that the only person who had ever told them of such a prohibition was Mr. Raburn. Additionally, none of the layperson witnesses were able to point to a particular ordinance which would serve to prohibit the actions taken by the DeCharleses.
We do recognize that the City has enacted certain ordinances regarding the issue of flood prevention and protection, specifically Section 34-27 of the City's Code of Ordinances which states in pertinent part:
In order to accomplish its purposes, this article includes methods and provisions for:
. . . .
(4) Controlling, filling, grading, dredging, and other development which may increase flood damage;
. . .
However, neither this ordinance nor any other in the chapter addressing flood prevention and drainage control specifically prohibits filling between the 172 and 176/177 contour linesthe particular action complained of by the Raburns. Moreover, Section 34-33 states that "In the interpretation and application of this article, all provisions shall be: ... (2) [l]iberally construed in favor of the [City];..."
We note that the Louisiana Legislature has expressly deemed the actions of a city discretionary in matters involving building codes and the issuance of building permits. La. R.S. 33:4773(D)[2]; Ayers v. Brazzell, *959 26,068 (La.App.2d Cir.09/21/94), 648 So.2d 406. There was no showing by the Raburns that the City abused its discretion in granting the DeCharleses' building permit, primarily, because there was no violation of a specific City ordinance, rule or regulation that prohibited such actions. Moreover, the evidence presented to the trial court by the City in support of its motion for summary judgment showed that the City had considered the plans submitted by the DeCharleses and, in fact, had sent City officials to the building site to examine the situation complained of by the Raburns.
The Raburns have alleged that the City acted arbitrarily and capriciously in its grant of a building permit to the DeCharleses, arguing that whereas the DeCharleses were granted a permit allowing them to fill between the 172 and 176/177 contour lines, the Raburns and other homeowners were not similarly allowed.[3] However, the Raburns failed to produce any evidence that permits were refused to some homebuilders but granted to the DeCharleses, which would be a necessary component to prove the City acted in an arbitrary and capricious manner. See, Clark v. City of Shreveport, 26,638 (La. App.2d Cir.05/10/95), 655 So.2d 617. Of the potential witnesses listed by the Raburns and deposed during the course of litigation, none stated that they were denied a permit by the City to take actions similar to that of the DeCharleses. Further, the Raburns state that the City failed to depose all of their potential witnesses who might tend to support their allegations; however, they failed to offer any depositions or affidavits of such parties that had been denied permits comparable to the one granted the DeCharleses in opposition to the City's Motion for Summary Judgment. And although the Raburns themselves claim that they were forced to build a home which differed from their original plans due to the City's prohibitions, there is no factual support for the allegation. In fact, pursuant to separate letters written by the Raburns to the City, it appears they were allowed to use fill to elevate their house to bring it up to the 177 contour line, although, allegedly, they were not allowed to elevate their entire lot.
The Raburns place emphasis on an internal City memorandum written by Morris, the chief building official for the City, to an assistant city attorney in which Morris indicated that the City may have erred in granting a permit to the DeCharleses. *960 However, we note that at the time Morris had written the memorandum, he only had been in his position with the City for approximately one month. Regarding the memorandum, he testified in deposition that when he wrote the memo, he was limited to the information given to him by Mr. Raburn. He further stated that he had no knowledge of any City ordinance, rule, regulation or policy, either written or unwritten, that specifically restricted the placing of fill between the 172 and 176/177 contour lines. Additionally, he testified that after writing the memorandum, he researched the situation with other City departments and concluded that no such restriction existed.
In this case, the Raburns have the burden to prove their allegations, that is, that the permits were granted in violation of a City ordinance or policy or the City acted arbitrarily and capriciously in its grant of permits to the DeCharleses. Therefore, because the City, which was the movant for summary judgment in this case, did not bear the burden of proof, it only needed to point out the absence of factual support for one or more elements essential to the Raburns' claim. At that point, the burden shifted to the Raburns, and the question became whether they produced factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. If the Raburns, as opponents to the City's motion for summary judgment, are unable to meet that burden, there is no genuine issue of material fact and summary judgment is considered proper. We conclude, after review of the record on appeal, that, clearly, the Raburns have failed to produce factual support sufficient to establish that they would satisfy their evidentiary burden of proof at trial; therefore, summary judgment in favor of the City was proper as a matter of law.

Motion for New Trial
In their second assignment of error, the Raburns argue that the trial court erred in failing to grant their Motion for New Trial. The basis for their motion was that the judgment was contrary to the law and evidence and that new evidence had been obtained after the grant of summary judgment.
A motion for new trial should be granted when the disputed judgment is clearly contrary to the law and evidence and, in any case, if there are good grounds therefor or when a party has discovered evidence important to his case which he could not have obtained during the proceedings with due diligence. La. C.C.P. arts. 1972 and 1973; Burke v. Baton Rouge Metro Airport, 97-0947 (La.App. 1st Cir.05/15/98), 712 So.2d 1028. Louisiana jurisprudence is clear that a new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Id.; Bush v. Cannata's Supermarket, Inc., 612 So.2d 794, 797 (La.App. 1st Cir.1992). The granting or denying of a motion for new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretion. Stephens v. State Through Dept. of Transp. and Development, 440 So.2d 920 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1119 (La.1984); Burke, 712 So.2d at 1031; Zatarain v. WDSU Television, Inc., 95-2600 (La.App. 4th Cir.04/24/96), 673 So.2d 1181; Hogan v. State Farm Auto Ins. Co., 94-0004 (La. App. 1st Cir.12/22/94), 649 So.2d 45, writ denied, 95-0215 (La.03/17/95), 651 So.2d 276.
First, as discussed herein, we do not find that the trial court's grant of summary judgment in favor of the City was contrary to the law or evidence presented *961 in the summary judgment proceedings; therefore, there was no abuse of discretion by the trial court in its determination that summary judgment was warranted as a matter of law.
Second, the "new evidence" presented in John May's ("May") affidavit was not such as to warrant the grant of a new trial for the Raburns. When a claim is made that a new trial is warranted due to newly discovered evidence, there must be a clear showing, not only that the evidence was discovered after the conclusion of the proceedings, but that every reasonable and diligent effort was made to procure it before the proceedings. LeBlanc v. Consolidated Aluminum Co., 401 So.2d 1082, (La. App. 3d Cir.1981), writ denied, 409 So.2d 617 (La.1981). Such was not the case here.
The Raburns stated May was out of town during the pendency of the City's summary judgment proceeding, although they apparently had knowledge of the gist of his testimony (he was listed as a witness on their pre-trial witness list), as well as his location. Although May was out of town during the period of time the City's Motion for Summary Judgment was pending, the Raburns did not show that he was totally inaccessible and was unable to execute an affidavit. Moreover, the record does not reflect that the Raburns apprised the trial court of their inability to secure May's affidavit during the necessary time period. At the least, the Raburns could have moved for an extension of time in which to respond to the City's Motion for Summary Judgment. Clearly, May's statements contained in his affidavit do not amount to newly discovered evidence simply evidence that was not conveniently obtainable by the Raburns.
Finally, in their appeal brief, the Raburns argue that "[a]pproximately a week after the [m]otion for [s]ummary [j]udgment was granted, ..." they obtained valuable evidence from a new witness, Grady Tingle ("Tingle"). They argue that since this new evidence was not obtainable until after the grant of summary judgment, it was impossible for them to have presented this evidence to the trial court in opposition to the City's motion and warrants a new trial of the summary proceeding. However, this new evidence was not included in the Raburn's Motion for New Trial and was not made part of the appeal record.
Under La. C.C.P. art. 2164, an appellate court must render its judgment based upon the record on appeal. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Lalena v. Municipal Fire and Police Civil Service Bd., 27,244 (La.App.2d Cir.09/27/95), 661 So.2d 520; Guedry v. Fromenthal, 633 So.2d 287 (La.App. 1st Cir.1993). A remand for the introduction of additional evidence is warranted only when the new evidence is likely to affect the outcome of the case. Our Lady of the Lake Hosp., Inc. v. Carboline Co., 632 So.2d 339, (La. App. 1st Cir.1993), writ denied, 94-0287 (La.03/25/94), 635 So.2d 228 and writ denied, 94-0753 (La.05/06/94), 637 So.2d 1052, citing, White v. West Carroll Hosp., Inc., 613 So.2d 150, 154 (La.1992). However, a case ordinarily will not be remanded to allow a party to produce evidence which was available in the first instance. Our Lady of the Lake Hosp., Inc., 632 So.2d at 343, citing, Gillaspie v. Mittelbronn, 326 So.2d 538, 544 (La.App. 4th Cir.1976), writ refused, 329 So.2d 470 (La. 1976).
As regards Tingle's testimony, it would appear that it was available to the Raburns in the first instance. In brief, they state that this evidence was obtained approximately one week after the Motion for Summary *962 Judgment was "granted," which was on July 13, 2000. The Raburns' Motion for New Trial was filed on July 21, 2000, and an order of the trial court was entered on July 24, 2000 ordering the parties to show cause on August 14, 2000 why the Motion for New Trial should not be granted. Thus, the Raburns had over a month to bring this new evidence to the attention of the trial court. Moreover, judgment denying the Motion for New Trial was not rendered until August 17, 2000, allowing the Raburns still additional time to bring the information to the trial court. The Raburns admit having received Tingle's evidence approximately a week after the summary judgment was "granted," clearly within the time frame their Motion for New Trial was pending; thus, we conclude that said information was available while the Motion for New Trial was pending and should have been brought to the attention of the trial court at that time. Therefore, not only can we not consider the new evidence improperly before the court, but neither will we remand to the trial court for reconsideration of that new alleged evidence.
Further, even if we were to consider the new evidence improperly brought before us on appeal, it does not appear that Tingle's testimony is likely to affect the outcome of the case. The Raburns state that Tingle was informed by Mustapha that no structure could be built inside the 177 contour line of Cross Lake. This is consistent with all of the testimony of record that pursuant to the City's requirements (as well as FEMA's regulations), no structure be built below the 100-year flood plane (the 176 contour line). Such information differs from the Raburns' allegations that the City allowed the DeCharleses to insert dirt fill between the 172 and 176/177 contour lines in violation of a city ordinance, and arbitrarily and capriciously granted the DeCharleses permits when denying other homeowners. Therefore, we conclude that even if considered, this new evidence would not appear to affect the outcome of the case.

CONCLUSION
For these reasons, we conclude that the judgment of the trial court was correct and is, therefore, affirmed. Costs of this appeal are assessed to the Raburns.
AFFIRMED.
NOTES
[1] Although the Raburns raise the general assignment that the trial court's summary judgment was in error, they make only a passing reference in brief concerning obstruction of view and put forth no argument on the issue; therefore, we will not consider it on appeal. See, URCA Rule 2-12.4; Laborde v. Presbyterian Village of Homer, Louisiana, Inc., 32,639 (La.App.2d Cir.01/26/00), 750 So.2d 1182; Knotts v. Snelling Temporaries, 27,773 (La. App.2d Cir.12/06/95), 665 So.2d 657.
[2] La. R.S. 33:4773(D) states in pertinent part as follows: "The performance of any enforcement procedure in connection with any building code shall be deemed to be a discretionary act and shall be subject to the provisions of [La.] R.S. 9:2798.1...." La. R.S. 33:4771 defines "building code" and "enforcement procedure" as follows:

. . . .
(2) "Building code" means any building, mechanical, plumbing, electrical, fire prevention, or other regulatory code or ordinance adopted by a political subdivision which establishes minimum standards for the use, occupancy, design, planning, engineering, construction, alteration, installation, repair, maintenance, location, removal, or demolition of any building, structure, or improvement to immovable property or for the quality of materials or equipment used in connection therewith.
. . . .
(5) "Enforcement procedure" means any any act, action, or failure to take action by a public servant or enforcement agency in connection with the implementation of any provision of a building code, including but not limited to the examination or review of any plan, drawing, or specifications, the conducting or completion of any inspection, the issuance, denial, or revocation of any permit, permission, license, or certificate, and the granting of any approval of construction....
[3] Pursuant to La. R.S. 9:2798.1, the City enjoys immunity from liability for performing or failing to perform discretionary acts, unless the actions are arbitrary and capricious. See, Gleason v. Nuco, Inc., 99-2954 (La.App. 1st Cir.12/22/00), 774 So.2d 1240.