RGUIDRY, J.
The East Baton Rouge Parish Fire Protection District Six (District Six) appeals a judgment of the trial court denying its petition for a writ of mandamus directed to the Department of Public Works for the City of Baton Rouge (DPW) and its director, seeking the revocation of an alleged unlawfully issued occupancy permit.
FACTS AND PROCEDURAL HISTORY
On November 11, 2002, a notice of inspection for an occupancy permit was issued to Triple T & D Investment LLC *772 (Triple T & D) for a commercial modular building located at 6810 Joor Road in Baton Rouge, Louisiana, within an area regulated by District Six. An occupancy permit was issued a short time after the issuance of the notice.[1] Prior to the issuance of either the notice or the permit, District Six notified DPW of its concerns regarding fire safety and response defects at the location and its refusal to approve the granting of a permit to Triple T & D because of these concerns. As a result of DPW’s action in issuing the permit without District Six approval, District Six filed a petition for a writ of mandamus against DPW and its director to force DPW to revoke the allegedly improvidently issued permit. Following a hearing, the trial court denied the request for the writ, and this appeal followed.
ASSIGNMENT OF ERROR
District Six maintains that the trial court committed legal error in denying its petition for a writ of mandamus.
APPLICABLE LAW
Article 3863 of the Louisiana Code of Civil Procedure provides that a “writ of mandamus may be directed to a public officer to compel the performance of a [¿¡ministerial duty required by law....” However, as indicated in La. C.C.P. art. 3862, use of this extraordinary remedy is limited to situations “where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice[J” Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. The remedy is not available to command the performance of an act that contains any element of discretion, however slight. Allen v. St. Tammany Parish Police Jury, 96-0938, p. 4 (La.App. 1st Cir.2/14/97), 690 So.2d 150, 153, writ denied, 97-0599 (La.4/18/97), 692 So.2d 455. Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty that ought to be performed. It never issues in doubtful cases. Wiginton v. Tangipahoa Parish Council, 00-1319, p. 4 (La.App. 1st Cir.6/29/01), 790 So.2d 160, 163, unit denied, 01-2541 (La.12/7/01), 803 So.2d 971. It is noted that the Louisiana Legislature has deemed actions of a city involving building codes and the issuance of permits to be discretionary. La. R.S. 33:4771(2) & (5) and 33:4773(D); Raburn v. Williams, 34,718, p. 6 (La.App. 2nd Cir.5/9/01), 786 So.2d 955, 958.
Although the granting of a writ of mandamus is considered improper when the act sought to be commanded contains any element of discretion, it has, nevertheless, been allowed in cases to correct an arbitrary and capricious abuse of discretion by public boards or officials. State ex rel. Torrance v. City of Shreveport, 231 La. 840, 846, 93 So.2d 187, 189 (1957); State ex rel. People’s State Bank v. Police Jury of Red River Parish, 154 La. 389, 396, 97 So. 584, 587 (1923); Louisiana Department of Treasury, Board of Trustees of State Employees Group Benefits Program v. Williams, 451 So.2d 1308, 1311 (La.App. 1st Cir.1984). Generally, the action of a governmental body is arbitrary, capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, 26,638, p. 9 (La.App. 2nd Cir.5/10/95), 655 So.2d 617, 622. It has also been noted that the violation of a specific city ordinance, rule or regulation that prohibits *773 such action can constitute an abuse of discretion. See Raburn, 34,718 at 6-7, 786 So.2d at 959.
DISCUSSION
In the matter before us, District Six alleges that DPW violated Section 8.5 of the Code of Ordinances of the City of Baton Rouge and Parish of East Baton Rouge (City/Parish Code of Ordinances).[2] That ordinance provides in paragraphs e |sand f respectively that no building permit shall be issued without the preliminary approval of the fire official and that fire flow tests shall be witnessed by the fire official prior to the issuance of a certificate *774 of occupancy. Assistant Fire Chief Kevin Sanchez of District Six testified that he was the designated fire official at District Six responsible for approving building permits and witnessing fire flow tests.
Sanchez stated that he neither approved nor witnessed fire flow tests prior to DPW’s issuance of an occupancy permit to Triple T & D. He first became aware that Triple T & D was seeking to place a building on property located at 6810 Joor Road in May 2001 when building plans and an application for approval were sent to him. Sanchez did not grant approval because the location did not meet fire safety requirements. Specifically, he pointed out the requirements by the Property Insurance Association of Louisiana (PIAL) that a water source capable of supplying 250 gallons of water per minute for a minimum of two hours be available and by Section 8.5(c) of the City/Parish Code of Ordinances that the maximum distance from the most remote exterior point to the nearest fire hydrant be no greater than 500 feet. Sanchez explained that failure to comply with these standards not only jeopardized the class one PIAL rating held by District Six, but it could also result in an increase in the premiums paid by homeowners who live in | fithe District Six area and increase the danger posed to District Six firefighters responding to a fire at the location. He recalled that he was not able to locate an alternate water source nor was one presented or suggested to him by Triple T & D.
Sanchez stated that although he did not approve the initial application, nor was his approval further sought in connection with the later application for an occupancy permit, he nevertheless noticed that in March 2002, a building had been placed on the site at 6810 Joor Road, without his knowledge or approval. He testified that he contacted DPW to notify the building officials that the structure was there in violation of city ordinances and to request that no permit be issued without the necessary approval of the fire district. In November 2002, however, Sanchez testified that he noticed that the utilities for the structure had been turned on, despite his communications with DPW. He testified that he then visited the site in the company of the District Six fire chief and an investigator, where they observed commercial activity taking place within the building, including the use of a time clock and several computer stations. Photographs of their observations were submitted into evidence at trial. Sanchez acknowledged that the approval of the fire district was not required for a permit to be issued to a residential building. See Section 8.5(j) of the City/Parish Code of Ordinances. However, he testified that he did not observe a bedroom in the structure in question.
Peter Newkirk, a building official with DPW, testified that District Six’s inspection and approval of the building at issue was not necessary because the building was a residential structure, not commercial. Newkirk acknowledged that he visited the building in question in November 2002 and observed commercial activity, such as the taking of load tickets, occurring within the structure relative to a dirt hauling business. He testified that the structure was a modular-type construction consisting of a kitchen, offices, a daycare area and a vacant room. Newkirk explained that he nonetheless considered the building to be a residential 17structure because he only observed commercial activities taking place in the front part of the building and no place else and because the application for the permit had stated that it was for a residential structure.
Newkirk testified that he could not recall DPW ever revoking an occupancy permit and that the decision to do so was *775 discretionary. He also stated that subsequent to his visit to the building in November 2002, he was not provided with any other information to indicate that the building was being used as a residential structure, but he was provided with additional information to indicate that it was being used as a commercial establishment based on a Natural Resources permit that was received for the location.
Based on the evidence in the record, we cannot say that DPW arbitrarily and capriciously abused its discretion in issuing the occupancy permit in dispute. As asserted by DPW, the agency was presented with an application for a residential structure, which does not require the approval of the fire official from the local fire protection district prior to the issuance of the permit. Further, although District Six did present evidence of commercial activity taking place within the structure and New-kirk even admitted to having observed commercial activity taking place at the site, there was no indication or proof that DPW had knowledge or evidence of the commercial activity prior to the issuance of the permit. Specifically, we note that the photos taken by the investigator for District Six and Newkirk’s visit to the site occurred after the issuance of the permit.
Thus, we cannot say that at the time DPW issued the permit, it violated City/Parish Code of Ordinances in doing so, and as such, it cannot be said that it arbitrarily and capriciously abused its discretion in issuing the permit. Furthermore, since Section 8.19(a) of the City/Parish Code of Ordinances states that the decision to revoke a permit is discretionary, we further hold that | Smandamus does not lie to order DPW to revoke the permit, even in light of the subsequent evidence of commercial activity taking place at the permitted site.
CONCLUSION
Therefore, based on the foregoing discussion, we find that the trial court correctly denied the petition for a writ of mandamus, and we, accordingly, affirm that judgment. All costs of this appeal in the amount of $967.48 are cast to the East Baton Rouge Parish Fire Protection District Six.
AFFIRMED.

. Although only a copy of the occupancy notice appears in the record, at the show cause hearing, a building official from DPW testified that the actual permit was issued on or after the date the notice was issued.

. City/Parish Code of Ordinances Section 8.5 provides, in its entirety:
(a) Definitions.
Fire official shall mean chief of the Baton Rouge city fire department or his designee. Except that in Central Fire Protection District, District 6 Fire Protection District, East Side Fire Protection District and St. George Fire Protection District, the term shall mean the chief of each respective district or his designee.
Fire protection system(s) shall mean any form of water supply that extends onto private property or installed in a structure for a fire sprinkler system or a fire hydrant that is not in [a] dedicated right-of-way and is constructed or installed for the protection of that structure.
(b) Water supply. An adequate water supply shall be provided for buildings to meet the necessary fire flow requirements as determined by fire official. Where public water supply is inadequate or not available, an approved alternative water source meeting the fire flow requirements shall be provided.
(c) Location of fire hydrants. The location and number of hydrants shall be designated by the fire official, but in no case shall the distance between installed fire hydrants exceed one thousand (1000) feet. Maximum distance from the nearest hydrant [to] the most remote exterior point of any building shall be five hundred (500) feet. The distance shall be measured on a roadway surface meeting the fire department access requirements of section 602.6 of the 1994 edition of the Standard Fire Prevention Code and all amendments and/or modifications thereto.
(d) Plans and specifications. Plans, specifications and hydraulic calculations for installation, modification, or alteration of any private fire sprinklers or private fire hydrant shall be submitted, by the owner or his designee, to the fire official of the desig-
nated fire district, for review and approval prior to installation, modification or alteration. Fire line service mains and fire hydrants shall be maintained in proper working order and shall be accessible to the fire official of the designated fire district for emergency use, for inspection and for testing. The installation and maintenance of water mains and fire hydrants located in private property shall be at the owner's expense.
(e) Preliminary approval. No building permit shall be issued without preliminary approval of the fire official. The building official may authorize the issuance of a building permit due to unusual delays with the approval of the fire official.
(f) Fire flow tests shall be witnessed by the fire official prior to the issuance of the certificate of occupancy.
(g) Before final approval and acceptance of fire suppression, alarm, detection or any fire protection device including standby power facilities and fire ventilating systems, in any building or structure, the installation shall be subject to an acceptance test. These tests shall be adequate to determine that the system or fire protection device has been properly installed and will function as intended. It shall be unlawful to occupy any portion of a structure until the required fire protection systems within that portion of the structure have been tested and approved by the fire official.
(h) No person shall install, make alterations or additions to a fire protective signaling, detection or fire suppression system before securing a permit from the fire official.
(i) The fire official may waive the provisions of this section and/or issue temporary or provisional approvals.
(j) The provisions of this section do not apply to one- and two-family dwellings or their accessory structures.