839 So.2d 1028 (2003)
Betty ARMSTRONG, Plaintiff-Appellant,
v.
HORSESHOE CASINO, Defendant-Appellee.
No. 36,927-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
Betty Armstrong, Pro Se Claimant-Appellant.
Wiener, Weiss & Madison, By: Larry Feldman, Jr., Mark L. Hornsby, Counsel for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
*1029 GASKINS, J.
In this appeal from a denial of worker's compensation benefits, the pro se claimant, Betty Armstrong, contends that the worker's compensation judge (WCJ) erred in failing to award her benefits. We affirm.

FACTS
The claimant began working as a slot attendant at the Horseshoe casino in December 1998. On January 29, 2000, she reported a "near fall" on a ramp leading onto the boat as she arrived for work. She complained of right shoulder pain which radiated from the shoulder to the right anterior chest; over the next few weeks she also complained of right elbow pain which was diagnosed as tennis elbow. Horseshoe provided medical care, including occupational therapy, for the claimant and paid for her medical expenses. Pursuant to doctor's orders, she was allowed to perform light duty at work.[1] On March 31, 2000, her right shoulder and elbow problems were deemed resolved by the doctor at Willis-Knighton Work Kare and she was released to regular work without limitations.
In October 2000, the claimant was seen by an orthopedic surgeon, Dr. Lewis Jones. She told him that she no longer had right shoulder pain but that she still had right elbow pain. She further told him that she had no prior history of problems with her right upper extremity. However, the claimant's medical records contradict this. For several years, she had been suffering from fibrositis. Also, on December 10, 1999, about six weeks before her work-related accident, she had been treated for swelling in the right arm which was diagnosed as acute right arm fibromyositis.
Dr. Jones ordered a nerve conduction study; the results showed bilateral carpal tunnel syndrome which was severe on the right. In November 2000, Dr. Jones performed a carpal tunnel release on the right side. As this condition was not related to her employment, her private insurer paid for this operation. She was also diagnosed as having tennis elbow; because it was initially under the impression that this condition was work-related, Horseshoe paid for tennis elbow release surgery in December 2000.
In January 2001, Dr. Jones released the claimant to return to light duty work using only her left arm. He continued to restrict her to light duty for the next few months.
In April 2001, Dr. Jones suggested that the claimant undergo a functional capacity evaluation (FCE) due to her claims that she was not better post-surgery. According to Paul Procell who performed the FCE, the claimant provided less than maximum voluntary effort during it and gave inappropriate pain behavior. Her subjective complaints were inconsistent and excessive when compared to the physical findings. She demonstrated no objective limitations within the right upper extremity. Consequently, he was unable to make an accurate determination because she did not demonstrate her true work capabilities; he recommended that she return to regular duties without restrictions. After receiving Procell's report on the FCE, Dr. Jones became suspicious that she was exaggerating her complaints. Based on the FCE, Dr. Jones likewise recommended that she be released back to full work without restrictions. He suggested a second opinion if she felt she could not work due to pain.
*1030 Thereafter, later in 2001, Dr. Jones referred the claimant to Dr. Ross Nelson, who specialized in pain management, because he was concerned that she might have reflex sympathetic dystrophy. However, Dr. Nelson concluded that she had only minimal evidence of that. Apparently the claimant remained on light work duty during this time period.
In the meantime, in February 2001, the claimant filed a disputed claim for compensation with the Office of Workers' Compensation (OWC). In its answer, Horseshoe admitted that it had not paid worker's compensation benefits to the claimant; however, it asserted that it had paid all submitted claims for medical expenses. The claimant filed amended claims with the OWC in September 2001 and March 2002. She claimed that the light duty work assigned to her aggravated her injury.
In connection with this worker's compensation claim, Dr. Lewis was deposed twice, in January 2002 and May 2002. In his first deposition, he opined that there was no connection between the carpal tunnel or the tennis elbow and the claimant's employment. In February 2002, relying upon Dr. Lewis' opinion, the casino asked the claimant to return to regular duty; she refused. Dr. Nelson gave her an excuse from work pending further testing. At his suggestion, a second FCE was performed in March 2002; the results were the same as the prior one. Horseshoe refused to continue her on light duty.
The matter was tried on May 31, 2002. By this time, the claimant's second attorney had withdrawn, and she proceeded in proper person. She presented the testimony of several casino employees. Candace Preston, a slot supervisor on the swing shift, did not recall the claimant being injured. Reginald Partner, a slot shift manager on the swing shift, testified that the claimant was an average employee. He recalled the claimant telling him that her arm hurt. The claimant's daughter, Raquel Denise Armstrong, was a dual rate supervisor in table games. She testified that her mother was a better than average employee. While conceding her mother suffered from fibromyalgia, she did not recall her mother complaining of swelling in her right arm in December 1999. Charles D. Peters, the casino risk manager, testified that he did not recall several specific conversations with or about the claimant. However, he generally outlined casino procedure for handling injuries. Wayne Edwards, the director of slot operations, also discussed general casino procedure. The claimant testified; she was extensively cross-examined. She contended that Dr. Jones did not accurately record her medical history.
The WCJ found that the claimant proved by a preponderance of the evidence that she sustained a work-related accident on January 29, 2000, which resulted in an acute contusion to the right shoulder and strain. However, the WCJ found that the claimant failed to prove that the accident resulted in a disabling condition and inability to work and earn her pre-injury wages or at least 90% of her pre-injury wages. The WCJ also found that she had failed to prove that her bilateral carpal tunnel syndrome and tennis elbow injuries were causally related to her employment with Horseshoe. Consequently, her claim for workers' compensation benefits was denied and dismissed with prejudice at her cost. Judgment was signed July 17, 2002.
On July 24, 2002, the claimant filed a motion for new trial. She asserted that the WCJ refused to allow her to present evidence pertaining to the result of an MRI she underwent on May 24, 2002, the results of which were received on May 28, *1031 2002. It allegedly showed deterioration of her rotator cuff. The motion was denied.
The claimant appeals in proper person.

ENTITLEMENT TO BENEFITS

Law
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. In a worker's compensation proceeding, the claimant bears the burden of demonstrating by a preponderance of the evidence that an employment accident resulted in disability. Clay v. Delphi Interior & Lighting Systems, 34,242 (La.App.2d Cir.12/22/00), 775 So.2d 1207.
The findings of the WCJ are subject to the manifest error rule. Chaisson v. Cajun Bag & Supply Co., XXXX-XXXX (La.3/4/98), 708 So.2d 375. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Stobart v. State Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
Whether the claimant has carried her burden of proof and whether her testimony is credible are questions of fact to be determined by the WCJ. Where there are two permissible views of evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Poland v. Kroger, No. 404, 32,576 (La.App.2d Cir.12/8/99), 747 So.2d 711, writ denied, XXXX-XXXX (La.4/7/00), 759 So.2d 764. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra.

Discussion
Although the brief of the pro se claimant is less than clear, our review indicates that she is generally complaining of the WCJ's denial of benefits. Horseshoe argues that the WCJ made a credibility call that the claimant's testimony was not credible, particularly emphasizing the findings that she was not truthful in the FCE's performed on her. The employer further asserts that no doctor testified that the claimant was disabled and that if she is disabled in any fashion, the disability is not connected to her employment.
A review of the evidence shows that the WCJ was not manifestly erroneous in finding that the claimant failed to connect her medical problems to her employment. There was no testimony that her bilateral carpal tunnel syndrome was caused by her employment or her fall. Although Horseshoe was originally under the impression that the claimant's tennis elbow was related to her January 2000 fall, the testimony of Dr. Jones, the claimant's physician, was to the contrary. After being presented with the claimant's medical history, he testified that her right elbow pain was probably not related to her fall. According to Dr. Jones, it is extremely uncommon for tennis elbow to be associated with a traumatic event. The December 1999 incident wherein she sought treatment for discomfort and swelling in her right arm indicated to him that she might have already had tennis elbow symptoms prior to the fall. While Dr. Jones did not believe she was an "overt malingerer," the results of the two FCE's made him suspicious of the validity of her pain complaints. He testified that he had no further treatment to offer her.
On the issue of the claimant's credibility, it is apparent that the WCJ made some determinations adverse to the claimant. She testified that, contrary to the notations *1032 in Dr. Jones' records and his testimony, she told him about her previous problems with her right upper extremity and her history of fibrositis. She asserted at trial that Dr. Jones must have confused her medical history with that of another patient.
We find no manifest error in the ruling of the WCJ that the claimant failed to show a causal link between her fall at work and her subsequent complaints of pain.

MOTION FOR NEW TRIAL
The claimant argues that the WCJ erred in not granting her motion for new trial. Horseshoe contends that the MRI evidence asserted in the motion for new trial was available before trial and that it was not important to the case at hand because there was no indication that the rotator cuff injury was work-related.
A motion for new trial should be granted when the disputed judgment is clearly contrary to the law and evidence and, in any case, if there are good grounds therefor or when a party has discovered evidence important to his case which he could not have obtained during the proceedings with due diligence. La. C.C.P. arts. 1972 and 1973; Raburn v. Williams, 34,718 (La.App.2d Cir.5/9/01), 786 So.2d 955. The granting or denying of a motion for new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretion. Burke v. Baton Rouge Metro Airport, XXXX-XXXX (La.App. 1st Cir.5/15/98), 712 So.2d 1028; Raburn v. Williams, supra.
The WCJ has great discretion in denying a motion for new trial. The newly discovered evidence asserted by the claimant concerns an MRI performed on May 24, 2002, the results of which were available on May 28, 2002. Trial on the merits was held on May 31, 2002. Given the availability of the information before trial, we find no abuse in the WCJ's wide discretion in denying the motion for new trial.

CONCLUSION
The judgment of the WCJ denying benefits to the claimant is affirmed. Costs of this appeal are assessed against the claimant, Betty Armstrong.
AFFIRMED.
NOTES
[1] Initially she was given light duty in the security department. She was later sent back to the slots department; light duty in that department consisted of greeting customers or filing machine data cards.