CARAWAY, J.
In this workers’ compensation case, the magnitude of the work-related accident and the extent of the plaintiffs injury were significantly disputed. Although the plaintiff was initially disabled from work, he returned after a few weeks and worked for another two months before being laid off by his employer due to business conditions. After consideration of the accident and medical testimony, the workers’ compensation judge determined that no job-related disability resulted and dismissed plaintiffs claim. Finding no manifest error in this ruling, we affirm.

Facts

James R. Futch (“Futch”) is a 62-year-old construction supervisor with a history of working manual labor jobs since age 14. Futch was employed by a commercial building contractor, J.O. Bailey General Contractor, Inc. (“Bailey”), between December, 1999, and the middle of January, 2001. Bailey hired Futch as a “working carpentry supervisor” or “working superintendent” and paid him a weekly salary.
The accident in question occurred on Thursday, October 26, 2000, at a commercial bank building that Bailey was remodeling. Futch and his co-worker, John Sims, were getting ready to “take a wall out.” Futch was standing near Sims, who was on a twelve-foot ladder removing acoustic ceiling tiles. Futch testified that a cinder block fell from the ceiling, hit him on the top of his head, “blacking] him out,” momentarily. Sims testified that some cinder block pieces about the size of a man’s hand came out of the ceiling while he removed the tiles, but he did not see anything hit Futch.
It was reported at trial that cinder block pieces are customarily placed on the top of the inside of the tile, in the corners, to make the tile lie down flat. Futch introduced into evidence as Exhibit P-2 a flat cinder block approximately 15/4" x 754" x 154" thick. He identified the exhibit as the type of cinder block which hit him in the head. After the accident he said he found three pieces of such a cinder block lying on the floor where he was hit.
Futch testified that he finished the workday and returned to work the next day. After the weekend, he was out sick until Wednesday, when he first sought medical treatment at the Monroe Medical Clinic. Futch complained of neck and shoulder pain due to cinder blocks falling “on right shoulder” six days earlier. X-rays of the cervical spine and both shoulders revealed degenerative disc syndrome and arthritis but no sign of any recent bone damage in the neck or shoulder. The doctor diagnosed cervical sprain and right shoulder strain and ordered Futch to stay off of work for the rest of the week. Futch returned to the clinic one week later for a follow-up visit and reported that he was starting to get better. The physician ordered physical therapy and continued Futch’s medications for pain and muscular sprains. Futch was released to work on a light duty restriction and returned to work November 13.
During his next visit to the clinic on November 22, Futch reported that he was “slowly getting better.” The doctor again indicated a return to light duty with a restriction against lifting with the right arm. During Futch’s next visit one week later, he complained of numbness in his *1122 right thumb and index finger and muscle soreness in his right shoulder. At this point, he was referred to Dr. Nawas, an orthopedic surgeon, for evaluation of his right shoulder. Nevertheless, Futch returned to the clinic twice more. On December 14, after his consultation with Dr. Nawas, Futch returned to the clinic and requested a full work release. The doctor’s note indicated that the shoulder strain was resolved and Futch was released to full duty. Futch testified that he requested the release to work because he feared that he might lose his job if he remained on partially disabled status.
When Dr. Nawas examined Futch on December 11, 2000, he diagnosed tenderness of the trapezius muscle, between the shoulder blades, which Futch told him was caused by a three-pound cinder block falling on him. Futch did not report any problems with his lower back. Dr. Nawas treated Futch with a steroid injection and told him to go back to work.
Futch’s next doctor visit occurred on January 10, 2001, when he visited his family practitioner, Dr. Yarbrough, complaining of low back pain, frequent urination, and bloody urine. Dr. Yarbrough diagnosed prostatitis. Futch did not report any workplace incident or accidental injury to Dr. Yarbrough during any of the four office visits which occurred over the next six weeks. At his last two visits in February, he complained of flank, penis and testicle pain, and heel pain. At his deposition, Dr. Yarbrough testified that Futch’s low back pain was not related to any type of head or neck injury. A lumbar spine x-ray taken on April 4, 2001, revealed degenerative changes indicative of degenerative disc disease.
In May, 2001, a second orthopedic surgeon, Dr. Douglas Brown, started treating Futch for neck and back pain. Futch told Dr. Brown that a cinder block struck him on his head and low back while he was bending over to lift a box. This was the first medical report indicating that Futch had been hit in the lower back. Dr. Brown eventually concluded that Futch had a 5% permanent impairment due to a degenerative back condition and released him back to work at a medium work level. Beginning in June, 2002, Futch began complaining of problems with his right thumb and hand, which Dr. Brown diagnosed as Quervain’s Syndrome related to Futch’s guitar playing.
Futch received physical therapy from two different providers. Initially, Therapy Works, Inc. treated Futch for tenderness in his neck and shoulders resulting from cervical and right shoulder strain. The therapist’s evaluation stated that Futch “reported that his condition began when a cinder block fell on his head at work.” Futch completed nine of ten visits scheduled with Therapy Works during November, 2000. Beginning in October, 2001, Futch was treated by Wied Physical Therapy for pain in his left low back and shooting pain down the back of his leg into his heel. Futch gave a history of being hit on the head with a cinder block on October 26, 2000. A functional capacity evaluation conducted by Wied concluded that Futch tested out at a “medium” work level.
Finally, Futch sought treatment from Dr. Lawrence Danna on April 12, 2001, for a swollen left ear. Dr. Danna’s handwritten notes stated that Futch’s chief complaint was that a “cement block fell on his left ear,” that the block fell ten feet, and that the top of his left ear had been swollen since November, 2000.
During the course of seeking medical attention at the Monroe Clinic and attending physical therapy, Futch worked for Bailey sporadically during November and December of 2000 and continued to receive payment of his weekly $600 salary “in lieu *1123 of compensation.” Bailey’s time records showed that Futch worked 33 days between November 13 and January 17. On January 17, 2001, Bailey laid Futch and two other supervisors off because of a lack of work. Futch has since been unemployed.
Futch filed a disputed claim for workers’ compensation benefits on March 7, 2001, alleging that “a cinder block and pieces of cinder block fell on him, knocking him down, injuring his right shoulder, back and neck.” Following trial, the workers’ compensation judge (WCJ) ruled against Futch’s claim. The reasons for judgment were best summarized by the WCJ as follows:
While this court is persuaded that debris fell from the ceiling being removed by defendant’s employee, Mr. Sims; and while this Court is persuaded that certain debris struck claimant, this Court is equally persuaded that the amount, size and weight of the debris is different than the debris described by claimant and offered as Plaintiffs Exhibit 2. Furthermore, claimant’s inconsistent versions concerning the part of his body struck by the debris has caused this Court to question the causal relationship between any injury he sustained and any disability he suffered. I note that during claimant’s testimony his versions of the accident differed in accordance with the part of his body for which he proclaimed injury. He has contended that the falling debris injured his head, ear, shoulder, lower back, groin, heel, hip and leg. His contentions are not believable and border the inconceivable.
Futch now appeals the denial of his claim for temporary total disability benefits and payment of any further benefits for medical treatment.

Discussion

Initially, we address appellant’s argument that the WCJ should have admitted the March 28, 2003 decision of the Social Security Administrative Law Judge into evidence. The ruling determined that Futch was entitled to social security disability benefits and was based upon the same medical records and reports submitted to the OWC. The ruling was issued after the trial of this matter and proffered into the record before the WCJ’s rendition of judgment. We find Futch’s argument unpersuasive. As Bailey points out, many factors are evaluated in finding a person disabled for the purposes of entitlement to social security benefits which are unrelated to the causal connection between a worker’s disability and accidental injury occurring in the workplace. For example, the rules for finding adult disability in a social security proceeding describe a five-step evaluation to assess the severity of the impairment, the claimant’s ability to do his past work, and the residual functional capacity of the claimant. 29 C.F.R. § 416.920. This assignment is therefore without merit.
An employee is entitled to compensation benefits for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). The employee has the burden of establishing a causal connection between the disability and the accident by a preponderance of the evidence. Foy-Watson v. General Motors Corp., 37,106 (La.App.2d Cir.5/14/03), 847 So.2d 85; Pugh v. Casino Magic, 37,166 (La.App.2d Cir.4/11/03), 843 So.2d 1202; Armstrong v. Horseshoe Casino, 36,927 (La.App.2d Cir.3/5/03), 839 So.2d 1028. The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, *1124 and there is sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Thompson v. Dillard’s Department Store, 32,974 (La.App.2d Cir.5/10/00), 759 So.2d 1074. However, an employee’s pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. When the claimant proves that he had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant’s work injury is presumed to have aggravated a pre-existing infirmity to produce his disability. Id.
In determining whether the worker has discharged his burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Bruno v. Harbert Int’l, 593 So.2d 357 (La.1992); Foy-Watson v. General Motors Corp., supra. The fact finder’s determination as to whether the worker’s testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert Int’l, supra; Foy-Watson v. General Motors Corp., supra. When findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Bruno v. Harbert Int’l, supra; Armstrong v. Horseshoe Casino, supra. In applying the manifest error standard, the appellate court must determine not whether or not the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Armstrong v. Horseshoe Casino, supra, citing Stobart v. State, through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993). Causation is not necessarily and exclusively a medical conclusion; it is usually the ultimate fact to be found by the court based on all of the credible evidence. Pugh v. Casino Magic, supra.
As shown by the above quote from the WCJ’s reasons for judgment, the WCJ did determine that an accident occurred when the falling debris and cinder block fell on Futch. The WCJ, however, could determine from the testimony that a large 15]6" x 7/6" slab of cinder block did not crash down on Futch. From his own testimony at trial, Futch only recalled being struck in the head. He admitted that he never felt being struck in the shoulder or lower back. He stated that after the accident he saw three pieces of cinder block which, he claimed, formed a shattered 15/6" x 716" cinder block. He also claimed that Sims told him after the accident that he had been “hit all over [his] back” by debris and that, on the basis of Sims’ report, he later told some of the doctors that he was struck in the shoulder or back. Sims did not give such report in his testimony before the WCJ. Therefore, from the standpoint of credibility, the WCJ could conclude that a much smaller piece of cinder block struck Futch on the head and right shoulder resulting only in the injuries which Futch temporarily experienced over the weeks immediately following the accident.
The WCJ’s conclusion is further supported by Futch’s initial reports of injury *1125 and the treatment he received immediately following the accident. His lower back pain which now represents the most significant disabling injury was not reported to and treated by the doctors at Monroe Medical Clinic or Dr. Nawas. His release to return to work by those doctors is evidence that Futch’s back condition was not manifested following the accident. Clearly, his degenerative spinal condition causes his back pain, at least in part, yet the initial medical examinations did not find a causal link between the accident and the back problem.
With the above evidence in support of the WCJ’s conclusion, manifest error is not shown merely by Dr. Brown’s conclusion that Futch’s injury to his lower back could have been caused by his receipt of a blow to the head or shoulder while bent over in a flexed position. Likewise, Futch’s position that he reported back pain to other workers long before his treatment by Dr. Yarbrough does not outweigh the evidence of the initial medical providers that a back injury was not present. Accordingly, from our review of evidence under the manifest error rule of appellate review, the factual conclusion of the WCJ may be affirmed.

Conclusion

For the above reasons, the judgment of the Office of Workers’ Compensation is affirmed at appellant’s cost.
AFFIRMED.
BROWN, C.J., dissents with written reasons.