STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0295

THE SALINGER GROUP, INC.

VERSUS

CITY-PARISH OF EAST BATON ROUGE

*Judgment Rendered:*     JUL 2 4 2020

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C673111

The Honorable Timothy E. Kelley, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Anderson O. "Andy" Dotson, III<br>Parish Attorney<br>Gwendolyn K. Brown<br>Assistant Parish Attorney<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>City of Baton Rouge and Parish of<br>East Baton Rouge |
| Gregory E. Bodin<br>Christopher M. Vitenas<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Brennan T. Baldridge d/b/a<br>The Salinger Group |

* * * * * * * *

BEFORE: WHIPPLE, C.J., McDONALD, THERIOT, CHUTZ,
AND BURRIS, JJ.

Chutz, J. dissents and assigns reasons. (by [illegible])

**THERIOT, J.**

In this mandamus action, the defendant appeals a trial court judgment making its alternative writ of mandamus peremptory in part and ordering the defendant to issue a permit to plaintiff. For the reasons set forth herein, we reverse the judgment of the trial court and recall the writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

On September 27, 2017, the Metropolitan Council of the City of Baton Rouge-Parish of East Baton Rouge ("City-Parish") adopted Ordinance #16657,[1] amending the Code of Ordinances of the City of Baton Rouge and the Parish of East Baton Rouge ("Code of Ordinances") to add Title 2, Chapter 9, entitled *Small Wireless Facilities,* "to establish policies and procedures for the placement of small wireless facilities in rights-of-way within the City-Parish's jurisdiction, which will provide public benefit consistent with the preservation of the integrity, safe usage, and visual qualities of the City-Parish rights-of-way and the City-Parish as a whole."[2] The City-Parish's expressed intent in enacting Chapter 9 was to establish uniform standards to address issues presented by small wireless facilities, such as: (1) preventing interference with the use of streets, sidewalks, alleys, parkways, and other public ways and places; (2) preventing the creation of visual and physical obstructions and other conditions that are hazardous to vehicular and pedestrian traffic; (3) preventing interference with the facilities and operations of facilities lawfully located in rights-of-way or on public property, as well as public safety vehicles; (4) protecting against environmental damage, including damage to trees; (5) preserving the character of the neighborhoods in which facilities are installed;

---

[1] Ordinance #16657 became effective on December 27, 2017, three months following the date of its adoption. Ordinance #16657 was later replaced by Ordinance #16873, effective July 25, 2018. References herein to the Code of Ordinances of the City of Baton Rouge and the Parish of East Baton Rouge are to the provisions in effect at the time of the events involved in this case.

[2] Baton Rouge, LA, Code of Ordinances § 2:380(A).

2

and (6) facilitating rapid deployment of small cell facilities to provide the benefits of advanced wireless services.[3]

Under the provisions of Chapter 9, a person wishing to place a small wireless facility in a right-of-way must file a small wireless facility application and obtain a permit before doing so.[4] The permit application must be made by the wireless provider or its duly authorized representative on a form (either paper or electronic) provided by the City-Parish[5] and must be accompanied by a fee for the actual, direct, and reasonable costs incurred by the City-Parish related to processing the application.[6] Chapter 9 sets forth certain information required to be included in a permit application, including the applicant's name and contact information, a general description of the proposed work, and the purpose and intent of the small wireless facility.[7] The scope and detail of the general description to be included in the application "shall be appropriate to the nature and character of the work to be performed, with special emphasis on those matters likely to be affected or impacted by the work proposed."[8] Permit applications must also comply with all applicable codes.[9]

Chapter 9 also sets forth the procedure for the City-Parish's review and processing of permit applications. Under these provisions, when a permit application is submitted, the City-Parish must review the application in light of its conformity with the applicable regulations of the Chapter.[10] Within ten days of receipt of the application, the City-Parish must determine and notify the applicant

---

[3] Baton Rouge, LA, Code of Ordinances § 2:380(B).

[4] Baton Rouge, LA, Code of Ordinances § 2:382(B).

[5] Baton Rouge, LA, Code of Ordinances § 2:382(C).

[6] The amount of the application fee is not set forth in Chapter 9; however, § 2:382(G)(1) states that the fee shall not exceed $500 each for up to five small wireless facilities and $250 for each additional small wireless facility, and $1,000 per application for each wireless support structure or attachment to a City-Parish-owned pole.

[7] Baton Rouge, LA Code of Ordinances § 2:382(D).

[8] Baton Rouge, LA, Code of Ordinances § 2:382(D)(3).

[9] Baton Rouge, LA, Code of Ordinances § 2:382(D)(4). "Applicable Codes" means uniform building, fire, electrical, plumbing, or mechanical codes adopted by a recognized national code organization or local amendments to those codes enacted solely to address imminent threats of destruction of property or injury to persons to the extent not inconsistent with the terms of Chapter 9. Baton Rouge, LA, Code of Ordinances § 2:381(B).

[10] Baton Rouge, LA, Code of Ordinances § 2:383(A)(1).

3

whether the application is complete, and if the application is incomplete, the City-Parish must specifically identify the missing information.[11] The City-Parish must make its final decision to approve or deny the application within sixty days and advise the applicant in writing of its final decision. If the City-Parish's final decision is a denial, the written notification must document the basis for the denial, including the specific code provisions upon which the denial is based.[12] If the City-Parish fails to act on a permit application within the sixty-day review period, the applicant may "provide notice that the time period for acting has lapsed and the application is then deemed approved."[13]

On February 20, 2018, almost two months after the effective date of Ordinance #16657, Brennan Taylor Baldridge, President of The Salinger Group, sent an email to Ebony Brown in the City of Baton Rouge's Code Enforcement Office in an attempt to file a consolidated permit application[14] for "98 small cell facilities" on behalf of The Salinger Group. Baldridge's email stated, "We were told no application form existed, so we prepared one using the application requirements defined in [§ 2:382(D)]." With regard to the required application fee, Baldridge's email stated "we are willing to pay for actual, direct, and reasonable costs incurred by the City-Parish related to processing [the] application subject to the limitation in [§ 2:382];" however, no application fee was ever tendered by Baldridge. Attached to the email was the permit application created by Baldridge, which outlined the application requirements from Chapter 9 and provided the requested information in response.

---

[11] Baton Rouge, LA, Code of Ordinances § 2:383(A)(1)(a).

[12] Baton Rouge, LA, Code of Ordinances § 2:383(A)(1)(b) and (c).

[13] Baton Rouge, LA, Code of Ordinances § 2:383(A)(2).

[14] § 2:383(A)(3) provides that an applicant who seeks to construct a network of small wireless facilities may elect to file a consolidated application for a single permit for multiple small wireless facilities.

David Cobb, the City-Parish's Building Official, responded by email to Baldridge on February 28, 2018, informing him that the application "will not be able to be processed at this time." Cobb's email went on to state:

> There are multi-departmental issues that are being addressed so the application can be processed. Also please be advised that the City/Parish does not own any telephone/electric poles in the right of way. Written permission would need to be obtained from whatever utility companies [sic] pole(s) would be utilized. Additionally, an address for each location/pole would need to be obtained to use the permitting software. These are not all inclusive of the [sic] what may be required for a permit to be issued but an indication of what is being done to assist and fulfill the request.

Baldridge replied to Cobb's email on March 1, 2018, noting that he was seeking to use only "traffic poles" owned by the City-Parish, not telephone or electric poles. In response to Cobb's statement that an "address" for each location or pole would be necessary, Baldridge replied that the ordinance did not require an applicant to provide an "address" for each location or pole and that the information he had submitted with the application was sufficient under Chapter 9.[15] Finally, with regard to Cobb's statement that the list of problems with the application was not "all inclusive," Baldridge pointed out that the ten-day period for the City-Parish to identify any additional missing information in the application under § 2:383(A)(1)(a) had expired and that "the ordinance does not allow for delays in processing submitted applications . . . for any reason."

Thereafter, on April 23, 2018, Baldridge emailed Brown, noting that no response to the February 20, 2018 permit application had been received from the City-Parish within the sixty-day application review period set forth in § 2:383(A)(1)(b), "[t]herefore, we are providing this notice that the time period for acting on the application has lapsed and the application is now deemed approved

---

[15] Baldridge's email stated:

> [T]he ordinance only requires the applicant to provide: "the latitude and longitude coordinates of each small cell facility." We included as Exhibit I to the application a chart which provided the geolocation (latitude and longitude) for each pole. This information was obtained using the City's open data portal which enabled us to include the City's traffic signal inventory number for each location. Additionally, we provided a listing for each location's primary street and cross street.

per Sec. 2:383(a)(2), effective as of the date of this letter." Baldrige requested that the City-Parish formally issue the consolidated permit.

On May 22, 2018, Ingolf Partenheimer, the City-Parish's Chief Traffic Engineer, contacted Baldridge by email, requesting a meeting so that he could get more information from Baldridge in an attempt to help move the application forward. Baldridge declined to meet with Partenheimer, stating that his application had been "automatically approved" under the ordinance and that he would not work with the City-Parish until they issued the permit.

On July 25, 2018, the City-Parish adopted Ordinance #16873, which was effective immediately and amended Chapter 9 in a number of ways. Most relevant to this case, it extended the time periods for the City-Parish to review and act on a permit application and removed the provision that allowed for an application to be "deemed approved" where the City-Parish failed to act on the application within the designated review period. Ordinance #16873 also expressly repealed any ordinances or parts of ordinances in conflict with its provisions.

The City-Parish did not issue a permit as requested by Baldridge, and on August 24, 2018, The Salinger Group, Inc. filed a petition for writ of mandamus, requesting that the trial court compel the City-Parish to issue the permit. The City-Parish filed a motion to dismiss The Salinger Group's petition for writ of mandamus, noting that "The Salinger Group, Inc." did not begin to exist as an entity until its incorporation on August 20, 2018, and therefore it could not have been an applicant under the provisions of Chapter 9.[16] The trial court dismissed The Salinger Group's petition for a writ of mandamus on the City-Parish's motion, and thereafter an amended petition for writ of mandamus was filed by "Brennan T. Baldridge, doing business as The Salinger Group." The trial court issued an

---

[16] The City-Parish's motion to dismiss also raised other grounds for dismissal, which are not discussed here.

alternative writ of mandamus and rule to show cause pursuant to La. C.C.P. art. 3865, and the matter was set for hearing.

The City-Parish filed a motion to dismiss the amended petition on the following grounds: the plaintiff in the amended petition (Brennan T. Baldridge, doing business as The Salinger Group) lacks standing because he is separate and distinct from the corporate entity that submitted the February 20, 2018 "application;" neither Baldridge nor The Salinger Group is an "applicant" as defined in Chapter 9, because an applicant must be a wireless provider;[17] the February 20, 2018 request for a permit was not an application which would trigger the City-Parish's duty to respond because it was not filed on a form provided by the City-Parish; the City-Parish satisfied any obligation it may have had to give notice of denial through its February 28, 2018 email informing Baldridge that his submission was being rejected; some of the locations identified by Baldridge's permit request were not owned by the City-Parish; the City-Parish had the discretion to reject Baldridge's request due to safety concerns, since the locations identified in the purported application were actually in the middle of intersections; Baldridge's submission did not include the application fee required by Chapter 9; and the provisions of the Code of Ordinances on which Baldridge's request for mandamus relief was based were repealed by Ordinance #16873 prior to the filing of the petition for mandamus.

A hearing was held on the amended petition for mandamus and the motion to dismiss on November 8, 2019. After hearing arguments on the motion, the trial court denied the motion to dismiss the petition for mandamus, noting that

---

[17] An "applicant" is defined as "any person who submits an application and is a wireless provider." Baton Rouge, LA, Code of Ordinances § 2:381(C). "Wireless provider" means "a wireless infrastructure provider or a wireless services provider." Baton Rouge, LA, Code of Ordinances § 2:381(P). A "wireless infrastructure provider" is a person, including a person authorized to provide telecommunications service in the state, who builds or installs wireless communication transmission equipment, wireless facilities, or wireless support structures, but who is not a wireless services provider. Baton Rouge, LA, Code of Ordinances § 2:381(O). A "wireless services provider" is a person who provides wireless services, i.e., any services, whether at a fixed location or mobile, provided using wireless facilities. Baton Rouge, LA, Code of Ordinances § 2:381(Q) and (R).

Baldridge was indeed an applicant, that he had submitted an application, and that he did not have another legal remedy available to obtain a permit. The trial court explained that although Baldridge could file another permit application, his February 20, 2018 application was already deemed approved under Chapter 9, and there was no assurance that a new application would be approved. After denying the motion to dismiss, the trial court heard testimony and received evidence on the issue of mandamus.

Baldridge testified that he initially contacted the City-Parish following the adoption of Chapter 9 to request an application form. Because the City-Parish did not yet have an application form available, Baldridge claimed he was specifically directed "that the form could be produced [by Baldridge] if all of the information was contained that the ordinance required, and that that information should be sent to Ebony Brown." Baldridge acknowledged that an application fee was required by the ordinance, but explained that since the ordinance required the payment of "actual, reasonable costs" up to a maximum amount set forth in Chapter 9, he believed that the City-Parish would instruct him at a later date of the exact amount due. Although § 2:382(G)(1) also provides for a set fee of $1,000.00 per application, Baldridge testified that he did not pay this amount because he was unsure whether he owed a single $1,000.00 application fee for the consolidated application, or ninety-eight $1,000.00 application fees (one for each location requested). Baldridge testified that he asked several City-Parish employees what fees needed to be paid, but he did not receive an answer and never received a bill from the City-Parish.

Although Baldrige received Cobb's February 28, 2018 email response to his application, identifying several deficiencies to be addressed, he did not consider this to be a notice of denial, and furthermore, he believed that his response to this email was sufficient to address the deficiencies noted. Although he did not supply

8

the "address for each location/pole" as requested in Cobb's email, Baldridge explained that he did not understand until much later that Cobb meant that he needed the latitude and longitude for each specific location or pole, as opposed to the latitude and longitude for the center of the intersection where the pole or poles are located. Baldridge testified that if Cobb had given him more specific instructions, he would have supplied the correct information.

Baldridge acknowledged that Partenheimer contacted him to request a meeting so that he could get more information from Baldridge in order to try to move the permitting process along, but that he declined because the sixty-day review period had expired and his application was already deemed approved. Baldridge told Partenheimer that he would not "work with the City" until the permit was issued.

Baldridge filed a second permit application on June 6, 2018, for different locations than those requested in the February 20, 2018 application. He testified that in response to this second application, the City-Parish sent him very detailed information and ordinance-specific citations of what exactly was wrong with his application. In the course of working with the City-Parish on the second application, Baldridge learned what information the City-Parish had been requesting on his first application (the latitude and longitude for each individual pole) that he did not understand at the time of his original application.

Cobb testified that Baldridge's email application was the first one received by his office following the adoption of Chapter 9, and it was submitted before the official application was even created by the City-Parish. By the time of the hearing, almost two years after the effective date of Ordinance #16657, the City-Parish had only received a total of four applications, including Baldridge's two applications. Cobb testified that his office's procedures for processing the applications were "getting better refined" and its responses more thorough as they

9

gained experience with the applications. Cobb's role in processing a small wireless facility permit application is to receive the application and confirm that the application is complete (including accurate locations) and that fees are paid before forwarding the application to the traffic engineering department for further review. Cobb does not have the authority to issue permits without a technical review from the traffic engineering department.

Cobb testified that he did not take any further action on Baldridge's application after his initial February 28, 2018 email because he did not receive a response from Baldridge with all of the necessary information to complete the application (e.g., the latitude and longitude for each of the ninety-eight individual locations). Although he acknowledged that he did not send a final denial letter within sixty days, Cobb explained that based on his understanding of the newly-adopted ordinance, he satisfied his responsibilities under Chapter 9 when he notified Baldridge that his application was incomplete, and he did not believe that he had any further responsibilities under Chapter 9 unless and until Baldridge sent additional information to address those identified deficiencies.

Partenheimer testified that his department is responsible for reviewing the "traffic side" of the permit applications. The applications do not come to his office for review until all of the location information is accurate and complete, because he cannot review the request without knowing exactly which pole at an intersection the request pertains to. After conducting a technical review of the completed application forwarded to his department by Cobb's office, Partenheimer provides comments from a traffic engineering perspective of issues to be addressed and resolved by the applicant, such as "distance from roadway, incorrect right-of-way widths, things of that nature."

Partenheimer explained that the location information in Baldridge's application was insufficient for his office to conduct its technical review because it

only allowed him to identify the intersections, but not the particular poles. Partenheimer explained that the identifying information used by Baldridge in his application came from a "traffic signal inventory" available to the public online, which was developed for an entirely different purpose and did not list all traffic poles located at the intersections. Of the intersections included in Baldridge's application, only three contained any city-owned poles; and although Baldridge requested ninety-eight locations for small cell facilities in his application, there were only eleven city-owned traffic poles in all of the intersections listed in Baldridge's application. Partenheimer further testified that although his department maintains traffic signals on state-owned poles pursuant to an agreement between the City-Parish and the state, based on his experience, the City-Parish does not have authority to issue permits to third parties to install equipment on state-owned property without the state's permission.

Partenheimer anticipated a number of problems with issuing a permit based on Baldridge's application, and based on his review of the information submitted with the application, he was concerned that Baldridge might not have a proper understanding of the technical aspects of installing equipment on poles. According to Partenheimer, Baldridge's application did not give dimensions, weights, or even identify some of the equipment. For instance, the application seemed to evidence a plan to mount the equipment on the poles using an attachment device that was actually meant for a roof. According to Partenheimer's testimony, the application "[did] not really have mounting information, thicknesses, what is going to be used, how it is going to be done, how it is going to be laid out, where the power is coming from, is there solar panels or not solar panels, because they are mentioned. There is a lot of information that is just not there. It really appears that two cut sheets got thrown together and that is it. There is no site plan or anything." One "big concern" with Baldridge's application was that installing the devices as

requested could "pull the pole over, or make it fly" or "turn" the pole. Partenheimer testified that the problems he identified pose a risk to public safety, but when he contacted Baldridge on May 22, 2018 to discuss resolution of those public safety concerns, Baldridge declined to discuss it with him because the sixty-day review period had expired.

Michael Todd Donmyer, District Administrator for the State Department of Transportation and Development,[18] confirmed that the latitude and longitude coordinates listed on Baldridge's application did not refer to individual poles, but rather the center of individual intersections where one or more traffic signal poles are located. Furthermore, Donmyer attested that all but three of the traffic signal ID numbers identified by Baldridge in his application refer to intersections with traffic signal poles either owned by the state or located within the state's right-of-way, and the City-Parish lacks the authority to issue permits for the installation of third-party equipment on such poles.

At the conclusion of the hearing, the trial court ordered that the alternative writ of mandamus be made peremptory as to the eleven locations identified in the judgment, which the trial court concluded were not state-owned poles or poles within the state right-of-way. The trial court ordered the City-Parish to issue a permit to Brennan Baldridge, doing business as The Salinger Group, for those eleven poles. The City-Parish appealed, arguing that the trial court erred in denying its motion to dismiss and granting the writ of mandamus, ordering it to issue a permit.

## DISCUSSION

A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty clearly required by law. La. C.C.P. art. 3863; *Bonvillain v. Department of Insurance*, 2004-0332, p. 3 (La.App. 1 Cir. 2/16/05),

---

[18] By stipulation of the parties, Donmyer's affidavit was admitted into evidence at the hearing.

906 So.2d 596, 598. The writ of mandamus is an extraordinary remedy and may only be issued in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862; *Gulfsouth Credit, Inc. v. Wiley*, 2019-0526, p. 1 (La.App. 1 Cir. 1/9/20), ---So.3d---, ---. In a mandamus proceeding against a public officer involving the performance of an official duty, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform. *Bonvillain*, 2004-0332 at p. 3, 906 So.2d at 598.

A ministerial duty is a duty in which no element of discretion is left to the public officer. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. *Hoag v. State*, 2004-0857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024. Mandamus will not lie in matters in which discretion and evaluations of evidence must be exercised. *Allen v. St. Tammany Parish Police Jury*, 1996-0938, p. 4 (La.App. 1 Cir. 2/14/97), 690 So.2d 150, 153, *writ denied*, 1997-0599 (La. 4/18/97), 692 So.2d 455. Mandamus is not available to command the performance of an act that contains any element of discretion, however slight. *Bonvillain,* 2004-0332 at pp. 3-4, 906 So.2d at 599.

Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. *Wiginton v. Tangipahoa Parish Council*, 2000-1319, p. 4 (La.App. 1 Cir. 6/29/01), 790 So.2d 160, 163, *writ denied*, 2001-2541 (La. 12/7/01) 803 So.2d 971. Although the granting of a writ of mandamus is considered improper when the act sought to be commanded contains any element of discretion, it has, nevertheless, been allowed in cases to correct an arbitrary and capricious abuse of discretion by public boards or officials. *City of Baton Rouge v. Douglas*, 2016-0655, p. 7 (La.App. 1 Cir. 4/12/17), 218 So.3d 158, 163; see also *State ex rel. Torrance v. City of Shreveport*, 231 La. 840, 846; 93 So.2d 187, 189 (1957) (where

13

the Louisiana Supreme Court held that mandamus was appropriate in a case involving the arbitrary refusal to grant a license). Generally, the action of a governmental body is arbitrary, capricious, and unreasonable if it bears no relation to the health, safety, or general welfare of the public. In addition, the violation of a specific city ordinance, rule, or regulation that prohibits a particular action by a governmental body can constitute an abuse of discretion. *City of Baton Rouge*, 2016-0655 at p. 7, 218 So.3d at 163, <u>citing</u> *Fire Protection District Six v. City of Baton Rouge Department of Public Works*, 2003-1205, p. 3 (La.App. 1 Cir. 12/31/03), 868 So.2d 770, 772-73, *writ denied*, 2004-0299 (La. 4/8/04), 870 So.2d 270.

Generally, an appellate court reviews a trial court's judgment on a writ of mandamus under an abuse of discretion standard. *City of Baton Rouge*, 2016-0655 at p. 7, 218 So.3d at 163-64. The trial court's findings of fact in a mandamus proceeding are subject to manifest error review. *Turner v. East Baton Rouge Parish School Board*, 2017-1769, p. 6 (La.App. 1 Cir. 6/4/18), 252 So.3d 990, 993, *writ denied*, 2018-1127 (La. 10/15/18), 253 So.3d 1299. However, questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the de novo standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute. *Carver v. Louisiana Department of Public Safety*, 2017-1340, p. 4 (La. 1/30/18), 239 So.3d 226, 230.

As noted above, mandamus is not an available remedy to compel performance of a duty in which the public officer must exercise discretion or evaluate evidence. It is clear from a review of the provisions of Chapter 9 that the public officers must do both. The City-Parish's review of a permit application is to determine its conformity with the applicable regulations, which includes compliance with uniform building, fire, electrical, plumbing, or mechanical codes, or local amendments to those codes enacted solely to address imminent threats of

14

destruction of property or injury to persons.[19]  Cobb and Partenheimer both testified that Baldridge's application did not contain sufficient information for the City-Parish to make this determination.

In addition, mandamus is only appropriate in situations where there is a clear and specific legal right to be enforced or a duty that ought to be performed; it never issues in doubtful cases.  Baldridge's entitlement to a permit under Chapter 9 was not entirely clear.  Although the City-Parish did not send a separate notice of denial within sixty days of Baldridge's application, Cobb's email notified Baldridge that his application was incomplete and identified certain information needed for review of the application, which Baldridge did not supply in response.  While Cobb's email arguably could have been clearer with regard to the information needed, the email clearly expressed that the application was incomplete and could not be acted upon in its current state.

Furthermore, although mandamus has been allowed to compel a public official to perform a duty involving an element of discretion where there had been an arbitrary and capricious abuse of that discretion by a public official, this exception is only applicable where the public official's exercise of discretion bears no relation to the health, safety, or general welfare of the public.  That is not the case here.  Partenheimer's testimony made clear that accurate and complete location information was critical to his ability to perform the technical review of an application, and the inaccurate and incomplete location information in Baldridge's application prevented Partenheimer from conducting his review and identifying public safety concerns.  Cobb requested this information from Baldridge, but Baldridge declined to address the deficiency, instead arguing that the information he sent should be sufficient.  Because Baldridge's failure to supply complete and accurate location information prevented the City-Parish from thoroughly reviewing

---

[19] See Baton Rouge, LA, Code of Ordinances § 2:383(A)(1) & (D)(4).

the application for any threats to public safety, the City-Parish's denial of the permit does not constitute an arbitrary and capricious abuse of discretion.

For these reasons, we conclude that it was error for the trial court to issue a writ of mandamus ordering the City-Parish to issue a permit to Baldridge. As such, we reverse the trial court judgment and recall the writ of mandamus.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is reversed and the writ of mandamus is recalled. Costs of this appeal are assessed to plaintiff-appellee, Brennan T. Baldridge, doing business as The Salinger Group.

**REVERSED; WRIT OF MANDAMUS RECALLED.**

THE SALINGER GROUP, INC.

VERSUS

CITY-PARISH OF
EAST BATON ROUGE

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

NO. 2019 CA 0295

CHUTZ, J., dissenting.

I disagree with the majority's reversal of the trial court's order that defendant-appellant, The City of Baton Rouge-Parish of East Baton Rouge (City-Parish) issue a permit to plaintiff-appellee, Brennan Taylor Baldridge, President of The Salinger Group (Baldridge), and the recall of the writ of mandamus. Under my reading of Ordinance #16657, the City-Parish simply failed to comply with the provisions setting forth the framework for obtaining permits for small wireless facilities in rights of way within the Parish.

The responsive email of City-Parish Building Official, David Cobb, on February 28, 2018 to Baldridge's February 20, 2018 emailed application cured any possible deficiencies as a result of the requirements of Sec. 2:382(C) that an application be on "a form, paper or electronic, provided by the City-Parish" and Sec. 2:382(G) that an application be accompanied by a fee. More importantly, although Cobb's email may have, as the majority holds, "notified Baldridge that his application was incomplete and identified certain information needed for review of the application, which Baldridge did not supply in response," it falls short of the requirements of Sec. 2:383(A)(1)(c) ("The City-Parish shall ... [a]dvise the applicant in writing of its final decision, and in the final decision document the basis for a denial, including specific code provisions on which the denial was based, and send the documentation to the applicant on or before the day the City-Parish denies the application."). Finally, under Sec. 2:383(A)(1)(b), it appears that

"[t]he City-Parish shall ... [m]ake its final decision to approve or deny the application within sixty (60) days" and, under Sec. 2:383(A)(2), regardless of whether the application was complete, "[i]f the City-Parish fails to act on an application within the sixty (60) day review period, the applicant may provide notice that the time period for acting has lapsed and the application is then deemed approved."

Reading Sec. 2:383(A)(1)(b) in pari materia with Subsection (A)(2), since there is nothing in the record to establish that the City-Parish made its final decision to approve or deny the application within 60 days as mandated under Sec. 2:383(A)(1)(b), it simply failed to act. There is no discretion given the City-Parish under the provisions of the ordinance. Upon notice by Baldridge "that the time period for acting has lapsed," the application was deemed approved. Therefore, the trial court correctly ordered the City-Parish to issue the permit to Baldridge and that the alternative writ of mandamus be made peremptory as to the eleven locations identified in the judgment.

2